John S. Gardner *et al.* v. The Anthony National Bank.

No. 9202.

Levy on Personalty — *requires such actual and exclusive posses-
sion as property will permit.* It is a requirement of a valid levy
upon personalty that the officer take such actual and exclusive
possession as the nature of the property will permit. Constructive
possession of a species of property admitting of actual and exclu-
sive possession, is insufficient as against a chattel mortgagee of
such property who obtains such possession without committing a
trespass or a fraud.

*Error from Harper District Court.*
*Hon. G. W. McKay, Judge.*

Affirmed.            Opinion Filed January 8, 1897,

*Stanley & Vermilion,* for plaintiffs in error.

*T. A. Noftzger,* for defendant in error ; *Geo. B. Crooker,*
of Counsel.

Martin, C. J. The original action was replevin
brought by the Bank against Gardner, who was Sheriff,
and Privett, who was Deputy Sheriff, to recover 125
head of cattle, 67 head of calves, 97 head of hogs, 19
brood mares, 1 stallion, 2½ sets of harness and 2 lum-
ber wagons. A trial was had before the Court and
a jury at January term, 1892, resulting in a judgment
in favor of the plaintiff below.

Prior to February 1, 1889, this property belonged
to F. B. & S. S. Singer, who held the same on two
large tracts of land four or five miles apart, one be-
ing known as the Silver Creek place and the other as
the Home Farm of S. S. Singer. On November 21,
1888, H. W. Lewis, president and trustee of the Kan-
sas National Bank, commenced an action against S.
S. Singer, F. B. Singer and others on a promissory

note to recover the sum of $4,130 and interest, and on January 30, 1889, he caused an order of attachment to be issued in the action to the Sheriff, and it was placed in the hands of Privett, the Deputy Sheriff, for service.   He testifies in substance that on Friday, February 1, he went to Silver Creek first and found 130 head of cattle which he levied on there, no person being present; but Joseph Hutchinson testifies that he was in charge of those cattle at the time, and that he did not see Privett there.   Privett further says that he then went from Silver Creek to the Singer farm and inquired for S. S. Singer, who was absent; that he then levied on other property, consisting of cattle, hogs, horses, mules, etc., which was in certain lots and in a barn ; that he had a conversation with Ned Griffin, an employe of Singer, in which Griffin agreed that he would take charge of and hold the property until the former could go and summon appraisers ; that Singer came home and said he was sorry a levy had been made, as he could arrange the matter ; and it was then agreed that Privett should return on Monday to appraise the property, unless there was some further understanding about it.   Privett then left the place, and did nothing further until the following Monday.

F. B. & S. S. Singer were largely indebted to the Anthony National Bank ; and on or about January 15, 1889, they executed to F. D. Denlinger, its cashier, a chattel mortgage, to secure certain promissory notes, amounting in all to $7,385, this mortgage being dated January 1, 1889.   Late in the afternoon of February 1, and after the conversation between Privett and S. S. Singer, the latter went to the Bank and told the managing vice president, H. M. Denlinger, that he wanted to secure the Bank by chattel mortgage, the indebtedness having largely increased since the giv-

ing of the first mortgage.    What occurred there is a
matter of some. controversy, but it resulted in the
giving of another chattel mortgage amounting to $4,-
988.15 on said property, and also upon certain corn,
oats, hay and millet on the place, and S. S. Singer
executed a lease of his farm to the Bank.    These
papers were dated February 1, although the trans-
action was probably not completed until after mid-
night.    Both mortgages were filed for record on the
afternoon of February 2.    T. A. Noftzger was one of
the attorneys for the Bank who assisted in the trans-
action ; and very early the next morning he started
to S. S. Singer's farm, where he arrived about 7
o'clock A. M., having the lease and the mortgages,
or copies thereof, in his possession.    He told Singer
that he wanted possession of all the mortgaged prop-
erty at once, and to this Singer assented.    Noftzger
then employed three or four men on and about the
place to feed and take care of the live stock, and en-
gaged board for them and for himself.    On Saturday
afternoon, at Singer's request, Hutchinson brought
the cattle from the Silver Creek place and turned
them in with the others on the S. S. Singer farm.
Noftzger and the men employed by him remained at
or about the farm in charge of the property until
Monday, when Privett came and demanded it, saying
that he had levied upon it on the preceding Friday ;
but Noftzger told him that he was in possession of the
property for the Bank, and would retain it unless
forced to give it up.    Privett then left, saying that
he would return and take it.    Thereupon Noftzger
had the gates to the lots and the doors to the barn
nailed up ; but on the next day Privett returned with
about 20 men, broke open the gates and doors and

took away the property; at least all that was re-plevied in this action.

No evidence was given tending to impeach the good faith of the indebtedness of F. B. & S. S. Singer either to the Bank or to Lewis. As to the latter, the first mortgage given to the Bank was not valid on February 1, because there is no pretense that he had any notice of it and it had not then been filed for rec-ord. It will therefore be seen that the decisive ques-tion in the case is, whether the proceedings of the deputy sheriff were or were not sufficient to inaugu-rate and continue a lien in force when Noftzger took possession for the Bank. There is no doubt that Noftzger's acts and doings were sufficient to consti-tute a possession good against the Singers, and, so far as appears, as against all the world except the Deputy Sheriff. If the latter then had a lien, the possession of Noftzger for the Bank was subject to it. There was some evidence on the trial and on the mo-tion for a new trial tending to show that, when S. S. Singer went to the Bank on Friday afternoon, he told the vice-president that Privett had been at his place with an order of attachment, a copy of which Singer had with him and exhibited to the officers of the Bank; and it is shown in the testimony in behalf of the Bank that they knew Privett had been at Singer's farm seeking to collect a claim. One creditor may, however, legally obtain a preference over another by the consent of the debtor. S. S. Singer may have acted treacherously with Privett, but the Bank sustained no relation either to the Deputy Sheriff or to Lewis preventing it from deriving an advantage even by Singer's bad faith to them. In taking possession under the mortgages, the

Bank assumed the risk of any prior lien or in-
cumbrance, whether it had knowledge of the same
or not.    There is an intimation that the Bank
may have obtained possession through connivance
with Griffin, but there is no evidence of this; and
perhaps Griffin considered that he had no duty to
perform in relation to the property after the conver-
sation between Privett and S. S. Singer; for we un-
derstand from the evidence that he did nothing toward
taking charge of or caring for the property and that
he asserted no authority whatever over the same.    In-
deed, he had no means of caring for the property un-
til the succeeding Monday, even had he been allowed
to occupy the farm, for he had no feed and no help,
and, so far as appears, no way of obtaining them.
Neither did the deputy sheriff go on Friday prepared
to take charge of the property upon which he formally
levied.    Though he had obtained a lease of the farm,
he could not have kept the live stock for a single day
without help and feed, yet no provision was made for
either notwithstanding he seems to have contemplated
doing nothing further until Monday.    On Saturday
morning, when Noftzger reached the Singer farm,
certainly nobody but the Singers had the actual do-
minion and control over the property.    Privett as
deputy sheriff had not the actual custody and posses-
sion either by himself or Griffin.    He had adopted no
measure whereby he might actually hold the property
subject to the order of the Court.    It is a requirement
of a valid levy upon personalty that the officer shall
take such actual and exclusive possession as the na-
ture of the property will permit.    Privett had, at
most, only constructive possession of a species of
property which admitted of actual and exclusive pos-
session, such as was in fact obtained by Noftzger for

the Bank. Like possession might have been obtained by Privett by driving and taking the property away and caring for it afterward; or perhaps by taking charge of it on the Singer farm and thereafter controlling it so that nobody could have obtained possession without committing a trespass or a fraud; but it is impossible to sustain the validity of this levy without disregarding principles heretofore recognized by this Court. *Lyeth v. Griffis*, 44 Kan. 159; *Throop v. Maiden*, 52 id. 258. See also 1 Shinn, Att. & Gar., §§ 244, 247, 256, 257 and 264.

Several questions are raised as to the testimony, the instructions of the Court and the refusal to give instructions requested by the defendants below. We have examined them all, but everything hinges upon the validity of the levy by the Deputy Sheriff, and as to this the jury was properly instructed, and there was a general verdict without findings upon any particular question of fact. We do not find that any material error was committed in the trial of the cause.

The judgment will be affirmed.

All the Justices concurring.