### C. A. KESSLER v. M. HALFF & BRO.

Decided April 6, 1899.

**1. Fraud Against Creditors—Liability of Third Party.**

One who, in pursuance of a fraudulent conspiracy with a debtor to defraud his creditors, purchased property from him which had been bought on credit and sells the same, dividing the proceeds with him, is not personally liable to the creditors for the original debt, apart from any question as to the existence of a lien upon the property or of fraud practiced upon the creditors in making the purchase from them.

**2. Same—Levy of Attachment.**

Where property is fraudulently transferred by a debtor by an instrument importing an absolute sale, it can not be subjected to an attachment lien under a levy by notice merely, but the levy, to be effectual, must be made by actual seizure of the property from the possession of the transferree. Revised Statutes, articles 200, 2349, construed.

APPEAL from De Witt. Tried below before Hon. JAMES C. WILSON.

*Kleberg, Grimes, Baker & Leonard,* for appellant.

*Price & Green* and *Levy & Schorn,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—About the 27th day of September, 1897, A. G. Wangemann, a merchant at Yoakum, was found by appellant Kessler, his father-in-law, to be insolvent, and on that day Kessler, who

claimed that Wangemann owed him $15,000, and Wangemann, who acknowledged such indebtedness, executed an instrument in writing, signed by both, the terms of which were to the following effect: Wangemann conveyed to Kessler (1) his stock of goods, implements, iron safe, all items of merchandise, fixtures, show cases, and all personal property belonging to him situate in a building, which was described; (2) all choses in action, books of account, notes, and judgments; (3) an undivided half interest in a cotton gin; (4) two hundred and fifty bales of cotton on a named platform. The title to all of which property Wangemann warranted. Kessler accepted the conveyance in payment of his claim for $15,000, and assumed the payment of something more than $15,000, in addition, recited to be owing from Wangemann to other named parties. This instrument was at once filed for record, and Kessler took possession of the property conveyed.

On the 1st day of October, 1897, appellees brought suit against Wangemann upon an account for $1221.25 and sued out an attachment, upon while the sheriff made the following indorsement, which truly states his action:

"Came to hand on the 2d day of October, A. D. 1897, and executed the same day of October, 1897, by levying the within attachment upon all and singular the goods, wares, and merchandise and personal property of every name and nature and by whatever description known or designated, conveyed in trust by A. G. Wangemann to C. A. Kessler on the 27th day of September, 1897, said property being now contained in that certain storehouse lately occupied by A. G. Wangemann in Yoakum, De Witt County, Texas, and levied upon as the property of said A. G. Wangemann. This levy being made by giving a written notice hereof to said C. A. Kessler, the person in possession of said property."

Kessler subsequently intervened, setting up title to the property thus attempted to be levied upon, and seeking to recover damages for the levy.

Plaintiffs filed exceptions to the plea for damages, and also filed against Kessler the following pleading seeking to recover judgment against him:

"Further replying to said answer, these plaintiffs say that the pretended conveyance from defendant Wangemann to defendant Kessler was made by said Wangemann to said Kessler with intent upon the part of both said defendants to hinder, delay, and defeat the creditors of said Wangemann in the collection of their debts against him, and particularly to hinder, delay, and defeat plaintiffs in the collection of their said debt sued on herein against the said Wangemann, and hence no title to the said property conveyed thereby passed to said Kessler by reason of said conveyance. The said conveyance from Wangemann to Kessler was made in pursuance of a conspiracy entered into between said Wangemann and said Kessler whereby said Wangemann bought goods from every merchant he could throughout the country with no intention of paying for them, and when sufficient goods had been obtained to serve the purposes of said Wangemann and said Kessler, said Wangemann then conveyed the same to said Kessler, who in conjunction with said Wangemann sold said goods

and divided the proceeds between themselves, and that the pretended debts recited to be due said Kessler and to be assumed by him are all fictitious.

"And plaintiffs say that the goods levied upon by their said writ of attachment have all been sold, and the proceeds divided between said Wangemann and Kessler, or else said Kessler has said proceeds now in his possession, and that said goods so levied upon were of the value of $1500."

Kessler urged a general demurrer to this pleading, which was overruled. Wangemann presented a motion to quash the return on the attachment on account of its vagueness and the lack of sufficient description of property levied on, and a further motion to require the sheriff, in case the first motion should be overruled, to amend his return by making a full description and inventory of the property seized, and both were overruled.

Upon a trial judgment was rendered against both Wangemann and Kessler for the sum sued for and costs, the judgment containing no foreclosure of an attachment lien, but reciting the levy, the acquisition thereby of a lien, and the conversion of the property by Kessler of the value of $15,000 pending the suit, and a consequent liability on his part for the debt.

Wangemann has not appealed, and hence the refusal to quash the return of the officer can not be considered upon Kessler's assignment. But the sufficiency of the levy to create a lien upon the property necessarily comes up in determining the questions raised by numerous assignments questioning the adequacy of the pleadings and evidence to support the personal judgment rendered against Kessler. The assignments raise the question as to the sufficiency of the plaintiffs' pleading against Kessler to authorize a recovery against him, and this will be first determined.

No facts are stated through which he is shown to have become liable for the debt in its original creation. There is an attempt to charge a conspiracy between Wangemann and Kessler, having for its object the fraudulent obtention of goods by Wangemann, to be appropriated by them jointly. Waiving any criticism of the generality and vagueness of the allegation, it is enough to say that it does not attempt to charge that the goods, the value of which is sued for, were obtained from plaintiffs by fraudulent practices. No support for the judgment can be found in this part of the pleading. No evidence was offered in support of it, and the judgment is not based upon it.

There are further allegations to the effect that the conveyance from Wangemann was made in pursuance of the conspiracy between them, for the purpose of defrauding creditors, and that the goods had been sold by Kessler and the proceeds thereof divided between him and Wangemann, in carrying out such conspiracy. That these allegations, apart from any question as to the existence of lien upon the goods arising from the attachment, show no personal liability on the part of Kessler, is settled by the decisions in this State. Le Gierse v. Kellum & Rotan, 66 Texas, 242; Blum v. Goldman, 66 Texas, 621. They could only be made

effectual in an effort to reach and subject the property to the debt. No such effort is made by the pleading, the sole object of which is to affect Kessler with personal liability.

If a cause of action is stated it must therefore be based upon the facts that plaintiff had acquired, by the attachment, a lien on the goods in Kessler's hands, and that Kessler, by converting them pending the suit, had defeated such lien and deprived plaintiffs of the fruits which they would otherwise have reaped from a foreclosure of it and a sale of the property.

The pleading set up a state of facts under which, we think, a levy such as was made would not be effectual. The allegation is that the goods had been conveyed to Kessler in fraud of creditors. If this was true, the conveyance did not entitle Kessler to possession as against the levy of the attachment, and did not therefore interpose any obstacle to an actual seizure of the goods. The general rule of law requires the actual seizer of the property to fix an attachment lien upon it. Great difficulty has been encountered in enforcing this rule, and at the same time allowing the taking, under such process, of property in which the defendant had an interest, but to the possession of which others, such as partners, mortgagees, pledgees, and others were entitled, as security for some right of their own with respect to it. Freem. on Ex., secs, 117, 120.

To remedy such difficulties the statute provided a method of levying upon the interest of the defendant in property thus situated, without disturbing the rights of the rightful possessor, by serving him with notice. At the same time the statute requires, in other cases, the taking of actual possession as before. We think it results from this that a levy by notice recognizes the rightfulness of the possession of the person holding it, and seeks to subject only the interest of the debtor remaining after satisfying the right of such possessor. Such a service of the writ is only applicable where the property is possessed by one entitled to its possession whose right is intended to be recognized. When made, it does not limit or impair such right, but leaves the possessor in the full enjoyment of it. If it involves the right to sell property for the satisfaction of some claim, the power must continue notwithstanding the levy, and its proper exercise can not create a liability. The course for the creditor to pursue is in most instances prescribed by the statute. It is to foreclose the attachment lien, sell the interest of defendant in the property, and leave the purchaser to satisfy the claim of the holders; or if, in case of a mortgage or pledge, the property has been sold by the mortgagee or pledgee after the levy, the right of the creditor or purchaser, according to the facts of the case, is to any surplus that may have been left after satisfying the debt secured. Wynne v. Bank, 82 Texas, 378.

This, we think, sufficiently illustrates the proposition that where the creditor intends to attack as fraudulent a conveyance under which a third party has received possession from defendant, he should cause an actual seizure of the property to be made, and thus put in issue the right

of such party to the possession. Otherwise we can see no restriction which a levy puts upon the action of either the possessor or the defendant in attachment. In case of possession under a recognized right in, or with respect to the property, less than whole interest, the possessor when notified of the levy knows from the law that he must not so act as to defeat the right of the creditor to subject any residuary interest of the debtor in the property. But under the facts alleged no such condition existed. The defendant had no rights in the property as against either plaintiffs or Kessler, and Kessler had no right, possessory or other kind, that prevented an actual seizure of the property. There was nothing of defendants to be reached by a notice, and no right of Kessler to prevent a seizure.

From what we have said it is apparent that, in our opinion, no lien was fixed upon the property if the facts alleged are true. To fix a lien a valid levy was essential. To a valid levy, a seizure was essential, unless some person other than defendant was entitled to possession, which, according to the allegation, was not true. To give the attachment the effect claimed would make this writ, under the levy by notice, fill a large part of the functions of the garnishment, without any statutory provisions such as regulate the latter remedy.

In the levy it is assumed that the conveyance to Kessler was "in trust," the character of which trust is not stated. If the pleadings had alleged a conveyance in trust to pay debts, the levy under such facts might be held sufficient; but even then, to show liability on the part of Kessler, it would have been necessary to allege the conversion by him of a surplus over and above the amount necessary to satisfy the purposes of the trust. It may be true, also, that in such a case the attaching creditor might be allowed to contest the validity of some of the debts attempted to be secured, and by defeating them increase the surplus; this it is unnecessary to decide. But such creditor can not, in our opinion, allege facts showing that an actual seizure was necessary to a levy and at the same time establish a lien on the property by a levy by notice only.

The pleadings being insufficient to support the judgment, it must be reversed. If we could see in the case any ground upon which, by amending their pleadings, plaintiffs might recover, we should remand the cause. But, as we have seen, without a lien there is no ground upon which to reach Kessler. The undisputed facts show clearly that the conveyance to Kessler was not intended as a trust deed or mortgage, but as an absolute sale. On its face the instrument purports to be such. Fress v. Baker, 81 Texas, 216.

If the conveyance was fraudulent, as the court below held, the property was subject to actual seizure, and the attempted levy created no lien. Hence it is unnecessary for us to determine whether or not the evidence justified the court's conclusion that the sale was made to defraud creditors. To sustain the judgment, both that fact and the fact of lien are essential.

If the sale was valid, it would of itself protect Kessler; and if it was invalid and there was no lien upon the property, he still would not be liable.

*Reversed and rendered.*

Writ of error refused.