JONES & NIXON v. FIRST STATE BANK OF HAMLIN.†

(Court of Civil Appeals of Texas. Ft. Worth. June 24, 1911. Rehearing Denied Oct. 14, 1911.)

1. ATTACHMENT (§ 364*)—CONVERSION—WAIVER OF RIGHT OF ACTION.

An attachment was levied on wood of a firm for a debt of a partner, who was the acting manager of the firm. Only a small part of the wood was ever removed, and that was sold to provide the expense of removing part of the wood from a pasture to a railroad right of way, where the main part was stacked. The officer did not take actual possession of the main part. The copartner was notified that his wood had not been levied on. The partner indebted voluntarily moved to quash the attachment and to abate the suit, and the court granted the motions. *Held,* that the firm waived its right to sue for the conversion of the wood, except as to the part sold.

[Ed. Note.—For other cases, see Attachment, Dec. Dig. § 364.*]

2. ATTACHMENT (§ 164*)—MANNER OF LEVY—STATUTES—"TRESPASSER."

Under Rev. St. 1895, arts. 201, 2349, requiring an attachment to be levied as an execution on similar property is levied, and providing that a levy on personalty is made by taking possession thereof, an officer in attaching wood stacked on land must perform such possessory acts or take such undoubted control as to constitute a trespass; a "trespasser" being one who unlawfully enters on or intrudes on another's land, or who unlawfully and forcibly takes another's personalty.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 464–479; Dec. Dig. § 164.*

For other definitions, see Words and Phrases, vol. 8, p. 7094; vol. 8, p. 7821.]

3. ATTACHMENT (§ 278*)—VACATION—EFFECT.

Under Rev. St. 1895, art. 216, requiring the court, on quashing an attachment, to order disposition of the property or the proceeds of any sale thereof by directing that the same be turned over to defendant, the court, on quashing an attachment on the motion of the debtor, must order the return of the property to the debtor, to receive which the law implies an obligation on his part, and a debtor who knew the effect of the quashing of an attachment must resume control of the property, in the absence of any preventing cause.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 980–982; Dec. Dig. § 278.*]

4. ATTACHMENT (§ 375*)—WRONGFUL ATTACHMENT—DAMAGES.

Where a debtor obtained an order quashing an attachment of personalty, only a small part of which had been removed, and that part sold, the recovery for the wrongful attachment was limited to the value of the property actually converted and sold, and to special damages, if any, and to deteriorations in value of the property, if any, while in possession of the officer under the attachment.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1378–1385; Dec. Dig. § 375.*]

5. ATTACHMENT (§ 364*)—WRONGFUL LEVY—WAIVER.

Where a partner, who was the sole manager of a firm, moved to quash an attachment on firm personalty for a debt due from him, and the court granted the motion, he could not deny the necessary legal effect of his deliberate action, amounting to a waiver of the conversion of the property; and he could not testify that in moving to quash he did not intend to waive the conversion caused by the attachment.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 1327; Dec. Dig. § 364.*]

6. ATTACHMENT (§ 377*)—WRONGFUL LEVY—EXEMPLARY DAMAGES.

Where a creditor, attaching firm property for the debt of a partner, ascertained that a copartner had an interest in the property, and informed him that he could at any time take the property that belonged to him, and the levy on the property was constructive, rather than actual, exemplary damages for the wrongful levy were not recoverable by the firm.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 1389; Dec. Dig. § 377.*]

Appeal from District Court, Jones County; C. C. Higgins, Judge.

Action by Jones & Nixon against the First State Bank of Hamlin. From a judgment granting insufficient relief, plaintiffs appeal. Affirmed.

See, also, 139 S. W. 671.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

J. B. McMahon, W. T. Shannon, and J. W. Boynton, for appellants. Woodruff & Yantis, G. M. Shelton, Spence, Knight, Baker & Harris, and Alex F. Weisburg, for appellee.

CONNER, C. J. This suit was instituted by appellants Jones & Nixon, on the 18th day of June, 1908, against the appellee, the First State Bank of Hamlin, a private corporation doing business in Hamlin, and against W. H. Hollis, as sheriff of Jones county, Tex., and others, as sureties upon his official bond, to recover both actual and exemplary damages for the alleged wrongful seizure and conversion of 1042 cords of wood, alleged to belong to appellants as partners. The defendants pleaded the general denial, and specially to the effect that there was no actual levy of the writ of attachment by virtue of which the conversion was charged, and that later the appellant Nixon, by motion duly made, secured the dissolution and dismissal of the writ of attachment and of the suit in which it had been issued, and that thereby the trespass, if any, had been waived. The court refused to submit the issue of exemplary damages, and the result of the trial was a verdict and judgment in appellants' favor for but $27.08 against all defendants; a judgment for a like amount being entered in favor of the sheriff and his surety over against the First State Bank of Hamlin.

On a former appeal of this case (139 S. W. 671), we held that under the circumstances stated in said opinion, and which will be hereinafter mentioned, the voluntary act of Nixon in pressing to a successful termination his plea in abatement and motion to quash the writ of attachment had the legal effect of restoring free of obstruction possession of all of the wood levied upon which had not been actually received and converted by the officer or lost in some way during the pendency of the attachment proceedings, and that hence appellants' recovery should be limited to the value of the wood actually converted, to such special damages, if any, as may have been suffered by reason of the attachment, and to deterioration in value, if any, of the property while in the hands of the officer.

On the trial from which this appeal has been prosecuted, the court in his instructions observed our conclusions, as stated in our former opinion, and the charges are now assailed. We will not reiterate the reasoning of our former opinion, but it will be necessary to an understanding of the questions presented that we state the facts, which are substantially as follows:

[1] Jones & Nixon, as partners, were dealers in wood at Hamlin; Nixon being the sole managing partner, and Jones living in an adjoining county. The First State Bank of Hamlin instituted a suit against Nixon, and on the 21st day of March, 1908, caused the issuance of an attachment for the purpose of a levy upon 1042 cords of wood, the greater part of which had been cut and stacked upon the right of way of the railway penetrating Hamlin. The remainder of the wood was situated in an adjoining pasture, where it had been cut and corded. The deputy sheriff, one C. W. Robinson, to whom the writ was delivered, made the levy complained of in substantially the following manner: He met appellant Nixon upon the street, informed him that he had "papers for him," and read the writ of attachment to him. He then went with an officer of the bank where the wood along the right of way was pointed out to him, and indorsed the writ as levied. He at the same time levied upon two lots, the individual property of Nixon, by merely going to where the lots were situated, and indorsing the levy thereon upon the writ. Thereafter, until the writ of attachment hereinafter mentioned was quashed, the officer from time to time "kept an eye" on the wood, for the purpose of seeing that it was not disturbed or taken by any one, and also, in order to prepare the way for some ploughing to be done in the pasture, removed about 60 of the cords therein situated to the right of way, where it was deposited with the main body, and from 6 to 12 cords of the wood were sold, in order to pay the expenses for this removal. It further appears that the appellant Jones, when he heard of the attachment, telephoned from the adjoining county to an officer of the bank, and was informed that "his wood" had not been levied upon, and that he could at any time come and get his part. Other than as stated, it does not appear that the officer making the levy or attempted levy of the writ of attachment either took actual possession of the wood, or that he at any time forbade either of the appellants or any other person to remove it. Some time after the proceedings above stated, the appellant Nixon presented and pressed to a successful termination motions to quash the writ of attachment and to abate the suit, which, as before stated, we held on the former appeal had the legal effect of a waiver of the trespass, if any, committed by the officer in making the levy. We yet think this conclusion was correct, and that the court's charge was not erroneous in so presenting it to the jury.

[2] Revised Statutes, art. 201, provides that "the writ of attachment shall be levied in the same manner as is, or may be, the writ of execution upon similar property." And article 2349 of the Revised Statutes declares that, as to executions, "a levy upon personal property is made by taking possession thereof, when the defendant in execution is entitled to possession; where the defendant in execution has an interest in personal property but is not entitled to the possession thereof a levy is made thereon by giving notice thereof to the person who is entitled to the possession or one of them where there are several." Article 2352 provides that "a levy upon the interest of a partner

in partnership property is made by leaving a notice with one or more of the partners or with the clerk of the partnership." These facts are susceptible of the construction that, in substance, the officer but gave notice to Nixon, one of the partners, and that the levy should be classified as one under article 2352, above cited; but, if not, we think it may be well doubted whether it was sufficient, as an actual levy of the writ, under the other articles of the statute quoted. The officer making the levy, in testifying as to how he made it upon the wood, said: "Yes, sir; at the same time I levied on the wood, I levied on some lots in the town of Hamlin. I took possession of them the same as I did of the wood. * * * No, sir; after I had made that kind of a levy, I did not put any one in charge of the wood on the right of way, and I did not stay there myself either. Of course, I felt kind of an interest in the wood, and kind of looked after it to see that people did not steal it, or haul it off, or destroy it. I did not do anything at all to try to prevent that but to keep my eye on it." While under our statutes it may be that there are cases where, such as where a house is erected on land under circumstances that make it personal property, or where the property is incapable of ready reduction to actual possession, an officer in levying on personal property may not be required to take manual possession, yet the statutes evidently require that in every case, and particularly in such a case as we now have before us, the officer must perform such possessory acts, or take such undoubted control, as to constitute a trespass. Freiberg et al. v. Johnson, 71 Tex. 558, 9 S. W. 455; Kessler v. Halff et al., 21 Tex. Civ. App. 91, 51 S. W. 48. An approved definition of a trespasser is "one who unlawfully enters or intrudes upon another's land, or unlawfully and forcibly takes another's personal property." Black's Law Dictionary, title "Trespass." What act of trespass relating to that part of the wood for which appellants were denied a recovery did the officer in this case commit? He did not take actual possession of any wood stacked on the railway right of way, or of any but an inconsiderable part of that corded in the pasture, for which appellants recovered, though there is nothing in the situation or in the character of the wood to have prevented; it being easily severable and removable. No caretaker was placed in charge; no express inhibition placed upon the owners; no public notice of the levy given; no person, so far as disclosed by the record, even had knowledge of the attempted levy, save the officers of the bank, appellants, and the deputy sheriff making the levy. Under such circumstances, did the officer have such possession as that, if the wood had been taken by a purchaser without notice, such purchaser could be held liable in trover or for conversion? It must be at least doubted, if not denied. The officer's possession at most was but constructive, and in Gardner v. Bank, 57 Kan. 619, 47 Pac. 516, it was held by the Supreme Court of Kansas that constructive possession of property capable of actual and exclusive possession was insufficient as against a chattel mortgagee, who obtained possession without committing a trespass or fraud. Other cases of similar import could doubtless be found, and in the opinion of some of us it is doubted if the facts constituted a conversion of any kind; but waiving this point, and assuming that the levy in question upon the wood was, under the circumstances, sufficient to uphold it, what is the effect of the action of appellant Nixon in securing the quashing of the writ?

[3] Article 216 of the Revised Statutes, so far as pertinent, provides that: "Should the attachment be quashed or otherwise vacated the court shall make the proper order making disposition of the property, or the proceeds of the sale thereof, if the same has been sold under order of the court directing that it be turned over to the defendant." It was then the duty of the court upon the dissolution of the attachment to order the return of the property, to receive which the law would imply an obligation on Nixon's part. Nixon fully knew the effect of the order of dissolution, for he testified on the last trial: "I was present in court when the plea in abatement and the motion to quash were brought before the court for its action. I was also present in court when the court sustained the plea in abatement and the motion to quash the attachment proceedings. * * * I supposed that the wood was still right there at that time; I did not go around to see it. * * * After my motion to quash the attachment proceedings in cause No. 644 was sustained, and the attachment proceedings vacated, I never did ask the sheriff of the First State Bank for the wood, and no one ever said that I couldn't have the wood at that time. Yes; so far as I know, I could have had the wood at that time. * * * I knew that after I had quashed the attachment that it was not worth the paper that it was on. * * * Yes, sir; I did know when the plea in abatement was sustained and entire proceedings quashed by the court that the property was all released from the attachment." Having invoked the action of the court, which operated as a restoration of the property, Nixon, in the absence of a preventing cause (and none was shown), should have followed up his diligence in securing an abatement of the attachment by resuming control of the property.

[4] It is insisted in behalf of appellants that this action could not constitute a waiver of the trespass upon the partnership property, for the reason that it was taken in a suit against Nixon alone; but we hardly think this answers the question. Nixon was undoubtedly the sole managing member of the partnership having right of possession, and no necessary interest in the suit against

him was served by quashing the writ of attachment. By the abatement of the suit, he secured the release of all of his individual property and all costs; the motion to quash was not limited to his individual property, and as managing partner he had the right to take such steps as he deemed best in the management and preservation of the partnership property. He then must be held to know, as he evidently did, that he had more than one remedy. He and his partner might treat the levy, if a sufficient one, as a conversion and replevy, or, by action dissolving the attachment, recover possession. There is nothing in the evidence indicating that the immediate return of the wood to the possession of the partnership was less advantageous. Indeed, it may have been much more to the advantage of the partnership to obtain immediate possession and control of the wood than to await the uncertain results of a suit for conversion; and, having voluntarily and deliberately adopted a course which, in legal effect, was intended to, and which in fact did, result in a virtual restoration of the property, we think the remedy for the conversion was waived, and that the right of the partnership was then limited, as before held, to the value of such of the wood as had been actually converted, and to special damages, if any, and to deterioration in value, if any, while in the possession of the officer. The record fails to show what became of the wood not sold by the officer. For aught that appears in the transcript before us, it yet remains upon the railway right of way, in the town of Hamlin, without change or deterioration, none having been pleaded in this suit; nor were any special damages pleaded or proven, so that, with the recovery allowed by the jury, together with the undisturbed wood, appellants are afforded full compensation, which is all that the law in its wisdom ever contemplates. We, therefore, find no error in the charges of the court assailed, reflecting these views, nor in the action of the court in refusing special charges advancing a contrary theory.

[5, 6] But two other questions are presented by appellants. It is complained that the court erred in refusing to permit appellant Nixon to testify that in making the motion to quash he did not intend to waive the conversion brought about by the levy of the writ of attachment; but, if this question is material, we think that he should not be heard to deny the necessary legal effect of his deliberate and voluntary action. Again, it is insisted that the court erred in declining to submit the issue of exemplary damages; but we do not think the issue was raised by the evidence. It is true there was evidence tending to show that some of the officers connected with the bank knew that the levy was to be made, and that Jones had an interest therein; but whether it was so known to the particular officer of the bank who pointed out the wood to the deputy sheriff making the levy does not appear. Evidently, after it was ascertained that Jones had an interest in the wood, it was not the purpose of the controlling officers of the bank to convert more than Nixon's interest in the wood, for, as stated, Jones was immediately informed that he could at any time take the wood that belonged to him. Moreover, on the whole, it seems that the levy upon the wood was constructive, rather than actual. In the language of the officer making the levy, it was made in the same manner as was the levy upon the real estate, and we know of no case in which it has been held that, in the absence of special damages resulting, exemplary damages will lie for such constructive levy. Indeed, it was held by the old Court of Appeals that damages did not lie for such a levy. See Miller & English v. Sims Bros., 3 Willson, Civ. Cas. Ct. App. § 65.

We conclude that all assignments of error should be overruled, and the judgment affirmed.