MAY v. MERCHANTS' & PLANTERS' NAT. BANK OF MT. VERNON.

(Court of Civil Appeals of Texas. Texarkana. Jan. 9, 1913.)

1. CHATTEL MORTGAGES (§ 153*)—ACTIONS FOR CONVERSION.

Where hogs were subject to a verbal chattel mortgage, a purchaser who bought without notice is not guilty of a conversion of mortgaged property, and the mortgagee has no right of action against him.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 255–262, 267, 268; Dec. Dig. § 153.*]

2. FRAUDULENT CONVEYANCES (§ 314*)—LIABILITY OF GRANTEE.

Though defendant purchased the property of an insolvent with the intention of enabling him to defeat plaintiff's claim, yet where it has been resold and cannot be retaken by plaintiff, plaintiff cannot recover a personal judgment, under Rev. St. 1895, art. 2544, providing that every conveyance or sale made with intent to hinder, delay, or defraud creditors shall be void; the statute merely invalidating the sale and authorizing the creditor to seize the property.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 972; Dec. Dig. § 314.*]

Appeal from District Court, Franklin County; P. A. Turner, Judge.

Action by the Merchants' & Planters' National Bank of Mt. Vernon against J. W. May. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

L. E. Keeney and J. M. Burford, both of Mt. Pleasant, for appellant. S. P. Pounders, of Mt. Pleasant, and Wilkinson & Wilkinson, of Mt. Vernon, for appellee.

HODGES, J. The appellee instituted this suit against the appellant, J. W. May, to recover damages for the conversion of mortgaged property. It was alleged, in substance, that on and prior to September, 1911, Jones & Pitman, a firm composed of W. A. Jones and W. H. Pitman, were indebted to appellee in the sum of $3,936; that this indebtedness was based upon an advance of money made by the appellee to Jones & Pitman for the purchase of hogs for shipment and sale in the markets; that there was an understanding with Jones & Pitman that the appellee was to have a lien upon the hogs as security for the advances made; and that when the hogs were sold the proceeds were to be immediately transmitted to the appellee and by it applied as a credit upon the indebtedness. On the 6th day of September Jones & Pitman sold to the appel-

lant, J. W. May, 120 head of hogs, which, it is alleged, were worth about $1,000, and upon which, it is claimed, the appellee had a lien by virtue of the verbal agreement above referred to. It is further alleged that this sale was fictitious, fraudulent, and void, and was made for the purpose of defeating plaintiff in the collection of its debt; that Jones & Pitman at the time were insolvent, and that this was known to May at the time of the alleged sale; that the transaction was the result of a collusion between May and Jones & Pitman, for the purpose of cheating and defrauding the appellee. The petition closes with a prayer for the value of the hogs, which, it is alleged, amounted to $1,-000. May answered by general demurrer and by general and special denial. The case was tried before the court without a jury, and a judgment rendered against May in favor of the appellee for $500.

[1] The evidence shows the existence of a contract between the appellee and Jones & Pitman substantially as stated in the petition. Jones & Pitman were engaged in buying and selling hogs, and the appellee advanced them money to the amount stated, for the purpose of carrying on that business. The hogs were to be sold in the market, and the proceeds paid over to the appellee and credited upon Jones & Pitman's account. About September 1, 1911, C. C. Dupree, cashier of appellee bank, became uneasy about the payment of this debt and began pressing Jones & Pitman for additional security, which they agreed to give. Pending these negotiations, Jones sold 120 of their hogs to May, who immediately shipped them to Ft. Worth and sold them. It must be conceded that the evidence was wholly insufficient to show that May had any notice of the existence of this verbal lien claimed by the appellee on the hogs purchased by Jones & Pitman, even if it should be held that such a lien was effective against purchasers of the hogs. Hence the judgment cannot be sustained upon the ground that May had converted mortgaged property.

[2] Counsel for appellee insist, however, that the evidence justifies the conclusion that Jones & Pitman were insolvent at the time the sale was made to May; that May knew of this insolvency, and entered into a collusive agreement with Jones & Pitman for the purpose of defeating the claim of the appellee. In other words, it is contended that the sale is void under the provision of article 2544 of the Revised Statutes.

The evidence shows that Jones & Pitman, at the time they sold the hogs in question to May, were also indebted to the bank at Winfield, Tex., for money advanced to enable them to purchase a portion of the hogs; that May gave his check upon the bank for $500, the purchase price of the hogs, and that this check was placed to the credit of

Jones & Pitman in the Winfield bank; that it a little more than discharged the debt then due. There is nothing to impeach the bona fides of the transaction, unless it be that the hogs were shipped out of Winfield within a few hours after they were purchased by May. This is explained in such a manner as to relieve it of the necessary inference of fraud. There is no evidence that May knew of the insolvency of Jones & Pitman at the time, or that he entered into any collusive effort to enable them to defeat any of their creditors. The judgment, therefore, if any could be based upon the finding that the transaction was fraudulent and void under the statute, is not supported by the evidence. The statute only goes so far as to make such sales as it refers to void at the instance of creditors. The effect of this provision is to preserve the right of the creditor to seize the property, notwithstanding it may have been transferred to another under any of the conditions mentioned; but it does not authorize the recovery of a personal judgment against the vendee in a fraudulent transaction if the property itself cannot be reached. Le Gierse v. Kellum, 66 Tex. 242, 18 S. W. 509; Kessler v. Halff, 21 Tex. Civ. App. 91, 51 S. W. 48. It follows, therefore, that, even if the transaction be considered fraudulent within the terms of the statute, there is no basis in the evidence for a personal judgment against May.

The judgment of the district court will therefore be reversed, and judgment here rendered for the appellant.