## WHITEHOUSE BROS. v. S. H. ABBOTT & SON. (No. 8489.)

(Court of Civil Appeals of Texas. Dallas.
Feb. 12, 1921. Rehearing Denied
March 12, 1921.)

**1. Sales ⬤⟳8 — Consignment of jewelry held bailment and not sale.**

Where plaintiff shipped jewelry to defendants under a written agreement, stating that the goods were sent for examination, and that they should remain plaintiff's property subject to its order, and be returned on demand, the transaction was one of bailment for the benefit of both parties, and not of sale; it appearing that the jewelry was sent to defendants on their request, with the understanding that as to any of goods sold defendants should account for the purchase money.

**2. Bailment ⬤⟳14(1)—Bailee liable for failure to place proper valuation on goods at time of delivery to carrier.**

Ordinarily a bailee in shipping goods to the bailor is liable for damages resulting from a failure to place a proper valuation on the goods at the time of delivering them to carrier.

**3. Bailment ⬤⟳14(1)—Bailee not liable for undervaluation of goods shipped.**

Where jewelry was delivered to a bailee for sale under memorandum stating that the goods were covered by insurance and to value all packages at $50 when returning, the bailee on returning the property was not liable because placing a purely nominal valuation of $25 on the goods.

**4. Bailment ⬤⟳14(1)—Bailee not liable because returning goods by mail instead of express.**

Where jewelry was delivered to defendants on bailment, the fact that it was sent by express and the memorandum referred to return by express does not establish that defendants in returning the goods by parcel post were guilty of negligence; there being no special agreement to return by express.

Appeal from Collin County Court; R. L. Moulden, Judge.

Action by Whitehouse Bros. against S. H. Abbott & Son. From a judgment for defendants, plaintiffs appeal. Affirmed.

Mort W. Muse and Jas. M. Muse, both of McKinney, for appellants.

John Doyle, of McKinney, for appellees.

TALBOT, J. The appellants sued the appellees to recover the value of three cluster rings, amounting, including 3 per cent. war tax, to $314.15. The petition alleges, in substance, that the appellants sent to appellees, at the latter's request, "on memorandum" a selection of bar pins and rings of the value $667 by Wells Fargo Express, for the "purpose of examination and sale"; that said merchandise was to remain the property of the appellants, and, if not returned to appellants, to be paid for at list price; that afterwards appellees returned to appellants by parcel post, insuring the same for $25, all of said merchandise except three cluster rings of the aggregate value of $314.15, including the war tax of 3 per cent. Appellants allege that the merchandise "were loaned" to appellees by the appellants for the purpose of purchasing the same outright or when making a sale to remit the list price as shown by said memorandum. Appellants also allege that the three cluster rings have never been returned to· them, and have not been paid for, and they sue for their conversion and in the alternative for damages on account of the alleged negligence of the appellees in not properly handling, insuring, and returning the property. Appellants further allege that the appellees are estopped to deny that the goods were worth their list value, and that they were lost because appellees made claim, by affidavit, on the United States post office authorities, in which they swore to said value, and that said goods were lost, and then collected the $25 for which they had insured them. "Defendants answered by general demurrer, general denial, and pleaded that plaintiffs shipped said goods to defendants for the purpose and with the intention of having defendants sell said goods if possible, and remit to plaintiffs the price of said goods to plaintiffs; that defendant, being unable to sell said goods, placed them in a package addressed to plaintiffs with the proper postage thereon, and deposited them in the United States mail; that plaintiffs had informed defendants that they had all their goods insured, and. did not instruct defendants how said goods should be returned, and that defendants, believing that the United States mails were a safe and convenient way to return said goods, so returned them." By supplemental petition the appellees specially excepted to the appellants' plea of estoppel, to the allegations that the goods were "loaned" to appellees, and pleaded a general denial, that they had, in returning the goods, insured them for $25, and that they had tendered to the appellants the $25 insurance collected by them, and that on refusal of the appellants to accept, the money was paid into the registry of the court. The case was tried before the court without a jury, and judgment rendered in favor of the appellants for the $25, which had been tendered to them and paid into the registry of the court by the appellees, and the costs of suit taxed against appellants. From this judgment the appellants appealed.

The only assignment of error is as follows:

"The court erred in rendering judgment for the defendants under the theory that said contract was a bailment contract, as the goods were sent at the special instance and request of the defendant, upon memorandum showing the terms of the contract as to the price of

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

different articles, and was sent by Wells Fargo Express to the defendants. Said memorandum in addition to showing the price stated in plain words and figures the following: 'Our goods are covered by insurance, value all packages $50.00 ·when returned by express.' The defendants under said contract were not gratuitous bailees or bailees for hire, but were bailees for their own benefit, if bailees at all, and their duty was to take the utmost care of plaintiffs' property while in their possession. And, further, the defendants were in duty bound to comply with all the terms of said contract, expressed or implied, and a failure to so comply, unless prevented by an act of God or other event making compliance impossible, and the goods were lost by any failure on their part, then the defendants became liable to the plaintiffs for the value of the goods so lost or the price agreed upon."

The following propositions are advanced:

(1) "The contract in question was a contract of 'sale and return,' and no defense could be made other than that the goods were paid for or returned." (2) "A bailee is liable for damages resulting from failure to place a proper valuation on the goods at the time of delivery to carrier." (3) "The defendants, if bailees, were bailees for their own benefit, the property having been loaned to them upon their request; and, if they .chose to return the goods in a way other than instructed by the bailors, or by a different carrier from the one employed by the bailors, then they made such carrier their agent, and were responsible for the actual delivery of the goods to the bailors." (4) "The defendants were guilty of negligence in the manner in which the evidence shows they attempted to return ·said property."

The facts found ·by the court are as follows: On the 15th day of December, 1917, the appellees, of McKinney, Tex., in writing requested the appellants to send them a selection of cluster bar ·pins and gents' rings as per memorandum. In compliance with that request the appellants, of Cincinnati, Ohio, sent to appellees by Wells Fargo Express a selection of bar pins and rings of the list price of $667. The goods were for examination, remaining the property of the appellants, subject to their order and to be returned upon their demand. On or about the 28th day of December, 1917, the appellees put all of said goods in a small box, and placed them in the post office at McKinney, Tex., properly addressed to the appellants at Cincinnati, Ohio, to be sent by parcel post, and insured them for $25. When the package was received by the appellants at Cincinnati three rings were missing, which were valued by the appellants at $305 and 3 per cent. war tax, making a total of $314.15. Appellants demanded payment of the appellees for the missing property, and the appellees refused to pay. Appellees collected from, the "post office" $25, for which they had insured the goods and tendered the same to the appellants. The appellees used such care and caution in returning the goods to the appellants as a reasonably prudent person would have done under the same or similar circumstances.

[1] The facts as found by the court are supported by the evidence, and authorized the judgment rendered. The contract or "memorandum" accompanying the shipment of the goods is as follows:

"Memorandum: 'Our goods are covered by insurance. Value all packages at $50.00 when returned by express. Whitehouse Brothers Diamond Importers. Cincinnati, December 15, 1917. To S. H. Abbott & Son, McKinney, Texas. . The goods described and valued as below are sent to you for examination, remaining our property and subject to our order and shall be returned to us on demand.' "

Then follows a description of the goods with the value of each article stated. We agree with the contention of the appellees that the transaction was not one of "sale and return," as urged by the appellants, but one of bailment for the benefit of both the appellants and the appellees. It possesses, practically, none of the usual elements of a sale. As will be observed, the written memorandum sent by the appellants with the goods specinc-ally states:

"The goods * * * are sent to you for examination, remaining our property and subject to our order and shall be returned to us on demand."

This language does not express a sale of the property. The appellants in their pleadings quote the language of the memorandum, but do not allege, as their interpretation of the contract, that it constituted a sale. In 6 Corpus Juris, the learned author of the article on Bailments states that the fundamental distinction between ·a sale and a bailment lies in whether an obligation exists to restore the thing delivered in the same or in an altered form, and in whether the title passes, and he says:

"The rule that where a person receiving property is not bound to return the identical property received, but may account therefor in money or other property, or thing of value, the transaction is a sale," is not applicable to bailments or consignments for sale. Page 1086, § 4, and page 1091, § 7.

It is said:

To so apply it in such case "is to do away with all bailments with power to sell, because there is no obligation * * * to restore the specific article, but only the value thereof in money, after a sale is made by the factor or consignee, or, in case no sale is made, then to restore the specific article." Barnes Safe & Lock Co. v. Bloch Bros. Tobacco Co., 38 W. Va. 158, 18 S. E. 482, 22 L. R. A. 850, 45 Am. St. Rep. 846.

The test seems to be:

"If the person to whom the possession of the property is delivered gets it by virtue of a contract of purchase (i. e., gets it under such

circumstances that the person parting with the possession can sue for the purchase price, irrespective of whether the person to whom the possession is delivered has sold or otherwise disposed of the goods), the contract is one of conditional sale, notwithstanding it may impose limitations upon the purchaser's right to dispose of the property and may require a definite plan of accounting. On the other hand, if the effect of the contract is that the property is delivered from the bailor to the bailee with the understanding that the title is to remain in the bailor, and the bailee does not assume initial responsibility to pay the purchase price, it is ordinarily not a conditional sale, but is a consignment although the bailee may have the option of purchasing the goods themselves by paying a stipulated price, or may have a right to sell them to other persons upon accounting to the bailor for a stipulated sum, and though the bailee's compensation in the matter may depend upon such profit as he shall realize on the difference between the price at which the goods are consigned and the price at which they are sold, and though the bailee may be responsible to the bailor for the value of such goods as he may sell on a credit, whether he collects from the purchasers or not." McKenzie v. Roper Wholesale Grocery Co., 9 Ga. App. 185, 70 S. E. 981.

[2, 3] The contention of the appellants to the effect that the appellees failed to place a proper valuation on the goods in question at the time they delivered them to the carrier to be returned to the appellants, and is therefore liable for the damages resulting from such failure, should not, under the facts of this case, be sustained. The only basis for this contention, and the application of the rule therein contended for, is that the total value of the property returned was $667, and the value of that lost was $314.15, while insurance amounting to only $25 was secured thereon from the carrier. It may be conceded that originally a bailee, such as appellees were, is liable for damages resulting from a failure to place a proper valuation on the goods at the time of delivering them to the carrier, but we think, as argued by the appellees, that when the valuation placed by a consignee, on return of goods, is immaterial, and not made with the intention of establishing the value of the goods, such valuation, whether high or low, does not affect the liability of such bailee. The total value placed by appellants upon the goods in question, including those not lost, was $667, and the appellees were instructed, in the event the goods were returned by express, to value them at $50, as their goods were covered by insurance. In explanation of the valuation placed upon the goods when shipped, one of the appellees testified that he only valued the package at $25, because—

"I understood from the memorandum on which the goods were sent to us that they were already covered by insurance, and for that reason I saw no necessity for placing a higher value on them."

Manifestly, no one, under the circumstances, would have concluded that the value the appellees placed on the goods when returning them was at all material. Appellees had been informed that the goods, at the instance of appellants, were covered by insurance, and if they were, whether appellees placed any valuation on them or not could not be material, as the value of the goods lost is all that could, in any event, be recovered from any person, and if the insurance company was liable to the appellants for the value of the property upon the policy issued by it, appellants were thereby fully protected, and the value placed by appellees upon the goods when they returned them by parcel post could in no way have affected a recovery of the insurance they informed appellees they had on the goods. Certainly, if the appellants regarded the valuation to be placed on the goods in returning them of importance, or contemplated that the full value thereof would be placed upon them, they would not have directed that they be valued at the small sum of only $50.

[4] It cannot be held as a matter of law arising on the facts that the appellees were guilty of actionable negligence in the manner in which they attempted to return the goods. The appellees, as we have said, were bailees for the mutual benefit of the parties, and not merely for the benefit of themselves, as argued by the appellants, and the degree of care imposed upon them as such was ordinary care. They were not, in returning the goods, to make delivery to the appellants personally, nor does it appear that they chose to return the goods in a way other than instructed by the appellants, or by a different carrier from the one employed by the appellants. The contract of bailment, at least, impliedly authorized a delivery of the goods to a common carrier for transportation to the appellants, and in the absence of a special agreement the appellees are not liable for the loss of the goods merely because they used some other medium of transportation than the appellants used originally, in returning the goods to the appellants. The trial court held that the appellees exercised the degree of care required of them in returning the goods—that is, such care as a reasonably prudent person would have exercised under the same or similar circumstances—and we are not authorized to disturb the holding.

Believing no reversible error is shown, the judgment is affirmed.

Affirmed.