No. 5987.

## FREIBERG, KLEIN & CO. v. S. C. JOHNSON ET AL.

1. LIABILITY OF SHERIFF FOR GOODS SEIZED.—Plaintiffs obtained a writ of attachment. It was levied upon a lot of goods not in the possession of the defendant, but of others claiming them. By consent of the plaintiffs the sheriff left the goods with the claimants. Before the levy, plaintiffs had given to the sheriff an indemnity bond. The writ of attachment was found to be defective and plaintiffs, a week later in same suit, obtained a second writ upon which, by consent of plaintiffs, the sheriff endorsed the levy, copied from the return upon the first, the returns showing that the goods were left in possession of the claimants. The second writ was foreclosed, no notice being taken of the first. The claimants kept the goods. In motion against the sheriff for the value of the goods alleged to have been lost by him, *held* (1) that the sheriff receiving an indemnity bond before making the levy did not prevent him from showing that the goods belonged to the claimants and were not subject to seizure. (2) After receiving an indemnity bond the sheriff making a levy upon property claimed by others can either retain the goods or surrender them. In the case of surrender he would assume the burden of proving that they were not liable to seizure. (3) The sheriff could show in defense that in fact no levy had been made upon the goods, (4) or that after levy he had released the goods, at request of the plaintiffs, in the attachment, or (5) that by the acts of the plaintiffs he had been induced to release them.

2. CHARGE—NOTICE.—A charge must be treated as an entirety. It cannot be required that each paragraph shall be so full in details as to be considered independently of the other parts of the charge. If, in the charge, actual and constructive notice are defined, it is not necessary that such definition be respected whenever the word *notice* occurs.

Argument for the appellants.

3. LEVY.—To constitute a levy upon personal property, it is necessary for the officer to take actual possession thereof, or to so control them as that he would be guilty of a trespass against the owner but for the writ under which he acts.

APPEAL from Cooke. Tried below before the Hon. F. E. Piner.

*Stuart, Bailey & Harris*, and *Hill & Hill*, for appellants: 1. If a sheriff, before or after the levy of an execution or writ of attachment, demands and accepts of the plaintiff a bond indemnifying him against any loss or damage he may sustain by reason thereof, he is bound to sell the chattels seized, whether they are the property of the defendant or not, and he can not, in an action by the plaintiff for failure to do so, set up the title of a third person. (Rev. Stats., arts. 165, 168, 2298; Murfree on Sheriffs, sec. 614; 1 Wade on Attach., sec. 248, p. 468; Herman on Executions, 335; Stone v. Pointer, 5 Murf., 287; Carson v. Hunt, 14 Penn. State, 510; 53 Am. Dec., 568; Connelly v. Walker, 45 Penn., 449; Fitler v. Fossard, 7 Penn. State, 541; 49 Am. Dec., 492; Van Cliff v. Flett, 15 John, N. Y., 149.)

2. As to notice or means of knowing by a purchasing creditor from a failing debtor of the intent of the debtor in selling. (Humphries v. Freeman, 22 Texas, 52; Mills v. Howeth, 19 Texas, 257; Belt v. Raguet, 27 Texas, 479; Brown v. Cactus Hedge Co., 64 Texas, 396; Traylor v. Townsend, 61 Texas, 146; Seligson v. Brown, 61 Texas, 180; Acts of Legislature of 1879, p. 57; Chambler v. Tarbox, 27 Texas, 139.)

3. On fraudulent conveyances: Bryant v. Kelton, 1 Texas, 415; Briscoe v. Bronough, 1 Texas, 336; Graham v. Roder, 5 Texas, 147; Thompson v. Shannon, 9 Texas, 538; Mills v. Walton, 19 Texas, 271; Gibson v. Hill, 21 Texas, 225; Howerton v. Holt, 23 Texas, 51; Van Hook v. Walton, 28 Texas, 72; Weisiger v. Chisholm, 28 Texas, 792; Sparks v. Dawson, 47 Texas, 144; Weaver v. Ashcroft, 50 Texas, 443.

4. The return of the sheriff was conclusive as to whether he had made a levy. (Rev. Stats., art. 167; Murf. on Sheriffs, secs. 535, 641; Keyser's Appeal, 13 Penn. State, 409; Weatherby v. Covington, 3 Strobhart, S. C., 27; Butler v. Maynard, et al., 11 Wend., 548; Ray v. Harcourt, 19 Wend., 497; Bond v. Willett, 1 Keyes, 381.)

Sheriff can not contradict his return. (Rev. Stats, art. 167; Waples on Attach, p. 264; Freeman on Ex., sec. 364; Murf. on Sheriffs, sec. 868.)

*Barrett & Dougherty*, for appellees, cited: San Antonio Street Railway Company v. Helm, 64 Texas, 148; Hall v. O'Malley, 49 Texas, 73; Queen Insurance Company v. Jefferson Ice Company, 64 Texas, 583; Freeman on Executions, 271; Drake on Attachments, 257, 423, 428, 294; 1 Wade on Attachments, sections 230, 232; Van Hook v. Walton, 28 Texas, 59; Nave v. Britton, 61 Texas, 572.

ACKER, JUDGE. This was a motion by appellants against S. C. Johnston, ex-sheriff of Cooke county, and the sureties on his official bond, to recover for the injury alleged to have been sustained by appellants by reason of Johnston's failure to account for a stock of liquors which, it was alleged, had been seized and taken into possession by Johnston, as sheriff, under and by virtue of a writ of attachment, issued at the suit of appellants, against H. Hyman; in which suit appellants had obtained judgment against Hyman for one thousand and twenty dollars, and foreclosing the attachment lien on the stock of liquors. Appellants sought to obtain judgment against appellees for the amount of their judgment against Hyman, with interest thereon, and costs.

Appellants caused two writs of attachment to be issued on the same cause of action and in the same suit, one on October 3, and the other on October 10, 1884, both of which were delivered to appellee Johnston, each on the day it was issued. The first writ being made returnable at an improper time, the second was issued to cure the defect in the first. The judgment of foreclosure was taken on the writ last issued without alluding to the prior writ. The same return was made upon each writ. At the time the first writ was placed in the hands of the sheriff, or soon thereafter, appellants delivered to the sheriff an indemnity bond, which he accepted. Appellees set up the following defense:

1. That the sheriff levied the first writ upon the stock of liquors found in the possession of Dwyer & Turner, who claimed the goods, and was proceeding to take an inventory, and move the goods to a place of safety, when he was directed by appellants, and their attorney, to leave the goods in the

possession of Dwyer & Turner; that the sheriff declined to be responsible for the goods if they were so left, and appellants assented thereto; and if the goods are lost, or can not be found, it is because of the directions given by appellants and their attorneys; that the sheriff's return on both of the attachments stated that the goods were not removed from the possession of Dwyer & Turner, nor taken possession of by the sheriff.

2.  That the goods levied on did not belong to Hyman, but belonged to Dwyer & Turner, who had purchased them and taken possession of them before the levy; that appellants become convinced of the ownership of Dwyer & Turner, and induced the belief upon the part of Johnston, that they acknowledged such ownership, and abandoned all claim to the property; and having induced this belief, they set up no claim to the property, until after Dwyer & Turner had disposed of it; notwithstanding they knew that the goods were being disposed of by Dwyer & Turner, and also knew of the impression made on the mind of Johnston that they had abandoned all claim to the property.

3.  That the second writ of attachment, upon which the judgment of foreclosure was taken, was never levied, nor were the goods taken possession of thereunder; that the return was made and endorsed thereon by direction of appellants' attorney, by simply copying the return endorsed upon the first writ, and the return so made showed that the sheriff did not take possession of the property, but left it where he found it, in possession of Dwyer & Turner, by direction of appellants and their attorney.

Appellants replied to these defenses by supplemental petition, in which they averred that the goods were taken possession of by the sheriff and inventoried, and the inventory made part of his return upon the writ; that the goods were left in a safe place, and if they were taken therefrom, it was with the consent of Johnston, or by his mistake and negligence; that appellants delivered to Johnston a good and sufficient bond of indemnity; that if there was any sale of these goods from Hyman to Dwyer & Turner, it was fraudulent and void because made with intent to defraud appellants and other creditors of Hyman, of which Dwyer & Turner had notice, or could have known by the use of ordinary diligence. **The first assignment of error insisted upon is as follows:**

"2. The court erred in charging the jury that if they believed the property levied upon, as shown by plaintiffs' petiion, belonged to Dwyer & Turner at the time of the levy, they should find for defendant, without considering any other fact, because this charge denies any effect whatever to the indemnity bond demanded and accepted by the sheriff, or to the return of the sheriff, both of which were in evidence."

Under this assignment it is contended with much earnestness and plausibility that the acceptance of the indemnity bond by the sheriff estops him from defending against this motion upon the ground that the goods were not the property of the defendant in attachment at the time the writ was levied.

There is no doubt that respectable authority may be cited in support of the proposition contended for by appellants, but we believe it will be found that in none of these authorities was the fact of levy and possession by the sheriff controverted. Be that as it may, it has not been so ruled in this State, that we are aware of, and in this case the issue of ownership of the goods was tendered by the appellees and accepted by appellants, who also raised the question of fraud in the sale of the goods by Hyman to Dwyer & Turner.

It would be a judicial monstrosity to hold, under the facts alleged in appellee's answer setting up the defense of ownership of the goods in Dwyer & Turner, that because the sheriff had accepted an indemnity bond at the time he levied a writ, which the statute requires him to levy at his own risk, he was thereby estopped to show that the goods were not in fact subject to the writ. If this doctrine could be maintained, sheriffs and their sureties could be made to pay the amount for which attachment is taken in any case, by collusion between the debtor and creditor. Knowing that he levies the writ at his own risk, the sheriff will naturally accept the bond of indemnity when tendered him. The goods being found in the possession of parties other than the defendant in the writ, when the sheriff is in the act of reducing the goods to possession, the plaintiff in the writ could relieve himself of all liability for damages by preventing the sheriff from taking possession of the goods, and then, after the goods are appropriated by others, make the sheriff and his sureties liable for the value of the goods.

In immediate connection with the charge here complained

of, the court instructed the jury that the burden of proof was upon the defendants to show by a preponderance of evidence that the goods really belonged to Dwyer & Turner, and not to Hyman. If the goods really belonged to Dwyer & Turner, then they were not subject to levy at the suit of appellants against Hyman, and appellants have sustained no damage by reason of the sheriff's failure to hold them under the writ. We think the sheriff might adopt either of two courses of action. He could hold the goods under the writ, and rely upon his indemnity bond for protection against liability in an action for damages for the conversion of the property; or, he could release the goods and take the burthen of defending against liability for their value by proving that they were not liable to the writ.

The third assignment of error is as follows: "The court erred in charge second in instructing the jury that they should find for the defendant if they believed there was no intent on the part of Dwyer & Turner to hinder, delay or defraud the creditors of Hyman in this, that the charge leaves the jury to conclude that there must be actual intent on the part of Dwyer & Turner to hinder, delay or defraud, and that no knowledge of such facts as would put reasonable men on inquiry would render the sale void as against the creditors of Hyman; in other words, the charge is erroneous in leading the jury to conclude that the debtor and grantee must be actuated by the same motive to render a sale fraudulent and void."

Immediately preceding the second subdivision of the charge, against which this assignment is directed, the court charged the jury as follows: "Every conveyance or transfer of property, made with intent to hinder, delay or defraud creditors, shall, as to such creditors, be void; but this will not affect the title of a purchaser for a valuable consideration, unless it appears that he had notice of such fraudulent intent, or might have known of such intent by the use of ordinary care and diligence."

Again, in subdivision five of the charge, the court instructs the jury as follows: "It is sufficient to affect Dwyer & Turner with notice of the fraudulent intent of Hyman (if he had it) if, by ordinary diligence, they might have known Hyman's condition and probable reasons for selling, or if they at the time of, or immediately prior to said sale, had a knowledge of such facts as were calculated to create a suspicion in their minds

that Hyman was actuated by a fraudulent intent in making the sale, and to put them upon inquiry in regard to his motives for selling, then such sale would, as to creditors, be void."

The subdivision of the charge complained of under this assignment, considered with reference to the portions of the charge just quoted, is not erroneous. The charge upon the subject of fraudulent transfers and conveyances, considered as an entirety, as it should be in determining its sufficiency, is a most admirable exposition of the law applicable to the case made by the pleadings and the evidence. It can not be reasonably expected that the trial judge will in every paragraph of a lengthy charge announce all of the principles of law applicable to every issue and phase of the case presented by the pleadings and evidence. Nor will it be presumed, in the absence of everything calculated to support such presumption, that the jury considered any particular paragraph of the charge to the exclusion of all others.

The fourth, fifth, sixth, seventh and eighth assignments of error relate to alleged omissions in particular portions of the charge, most of which we find are supplied in other portions of the charge, and those not so supplied we think are immaterial. If this were not so, however, it was the duty of appellants to request additional instructions upon the points they thought had not been sufficiently presented in the general charge, and, if such requested instructions were refused, then to call the attention of this court, by proper assignments of error, to the refused charges. (Railway Company v. Helm, 64 Texas, 148; Id., 583.)

The thirteenth assignment of error is: "The court erred in refusing the instructions asked by the plaintiffs."

We find in the record five special instructions requested by the appellants and refused. This court has uniformly held that such assignments of error can not be considered. (Railway Company v. Leak, 64 Texas, 654; 66 Texas, 131; Id., 682; 67 Texas, 160; 68 Texas, 282; 69 Texas, 273.)

The ninth assignment is as follows: "The court erred in the eighth charge, because it is vague, indefinite and uncertain, and calculated to mislead and confuse the jury, and because the charge assumes that, as the property was not removed at the instance and request of plaintiffs, but was suffered to remain where it was at their risk, the levy was vacated; and further, because said charge informs the jury, or is of such

doubtful construction that the jury might conclude from it that the sheriff can not make a proper levy on goods which he has left in the hands of third persons at the request and risk of plaintiffs; and further, because this charge in effect informs the jury that the sheriff may impeach and contradict his return, it being in evidence that the sheriff returned a levy."

The portion of the general charge complained of in this assignment is as follows: "If such first writ of attachment was in fact levied on said goods, and a list of the goods taken by the officer, but if, by order of plaintiffs or their counsel, said goods were not removed by him nor taken into his possession because of such instructions, and if you further find that said officer at said time notified the plaintiffs, or their attorneys, that he would not be responsible for said goods, but that if he left the goods where they were it would be at the risk of plaintiffs, and if plaintiffs or their attorneys agreed to this and assumed said risk and did not hold said officer responsible for said goods; or if by the acts done or words spoken by plaintiffs or their counsel said officer was led to believe, and did believe, that said levy, if ever made, was abandoned and released, and such words or acts were such as would have induced an ordinarily prudent man to believe that such was the case, and the officer showed the true facts by his return, then said officer could not be held liable by reason of said first levy, and plaintiffs could derive no advantage by reason of a levy that they themselves may have so caused to be released (if they did so)."

"And if, after this was done, plaintiffs sued out a second writ of attachment, the mere fact that the sheriff copied the return on the former writ of attachment (if he did so) would not constitute a levy of said last attachment, but he would be compelled in order to make a legal levy, to go to the place, and in the presence of the goods to be levied upon, and take such possession thereof, or so controlling said goods as that he would be guilty of trespass against the owners of the goods but for the writ which he attempted to execute, and even after such second levy, if the plaintiffs or their attorneys, by words or acts that were reasonably calculated to lead an ordinarily prudent man to believe that they had abandoned or released the goods, did so induce said officer to relinquish the same, or leave them in the custody of those who afterwards appropriated them, said officer would not be liable for them."

We do not think this charge subject to the criticism made upon it by this assignment. The charge correctly instructs the jury as to what is necessary to constitute a levy upon personal property. The material issues made by the pleadings and the evidence were: Was the writ of attachment under which the judgment of foreclosure was taken ever levied? If it was, was the levy abandoned or released? If the levy was abandoned or released, was it done by the sheriff, without authority of plaintiffs, or was it done by direction of plaintiffs, or was it done by the sheriff in pursuance of the belief created in him by such acts and declarations upon the part of plaintiffs or their attorneys as were reasonably calculated to produce the belief that the levy had been abandoned?

These, like the questions of fraud in the sale from Hyman to Dwyer & Turner, were purely questions of fact, upon which there was considerable conflict in the testimony. In other portions of the charge immediately following the portion here complained of, the converse of the propositions contained in the eighth paragraph is fully and fairly submitted to the jury. The writs of attachment had been destroyed by fire, and the returns entered upon them were proven by parol. All of the witnesses testified that the returns upon the two writs were the same, and that both stated that the property was left in the possession of Dwyer & Turner by direction of plaintiffs.

All of the assignments of error that are so presented as to entitle them to be considered, are directed against the charge of the court. We have carefully considered the objections urged, with reference to the entire charge, and are of opinion that there is no error of which appellants can justly complain. We therefore conclude that the judgment of the court below should be affirmed.

*Affirmed.*

Opinion adopted October 23, 1888.

STAYTON,
*Chief Justice.*