## EXPORTERS' & TRADERS' COMPRESS & WAREHOUSE CO. v. BARGAINER.

### No. 1518—5824.

Commission of Appeals of Texas, Section A.

Jan. 27, 1932.

Spivey & Spivey, J. W. Spivey, and Sleeper, Boynton & Kendall, all of Waco, and Bartlett & Carter and Higgins & Glass, all of Marlin, for plaintiff in error.

Sam R. Scott, of Waco, and Oltorf & Oltorf, of Marlin, for defendant in error.

SHARP, J.

H. O. Bargainer was the owner of 15 bales of cotton, which were destroyed by fire while held for storage by the Exporters' & Traders' Compress & Warehouse Company in its warehouse at Marlin, Tex. He sued that company for the value of the cotton, and seeks to establish liability on the alleged ground that the latter was guilty of negligence in permitting destruction of the cotton by fire, and he recovered a judgment for the value of his cotton, with interest thereon in the sum of $1,858.49. The Exporters' & Traders' Compress & Warehouse Company prosecuted an appeal to the Court of Civil Appeals at Waco, and the judgment of the trial court was affirmed. 31 S.W.(2d) 321, 322.

Plaintiff in error by various assignments contends that the trial court erred in refusing to direct the jury to return a verdict in its favor, upon the theory that it was a private warehouse, and also by reason of the stipulations contained in the cotton tickets issued by the company to the effect that the company would not be liable for the value of the cotton, in the event it should be destroyed by fire, and the evidence showing that it was destroyed by fire.

Bargainer alleged, in substance, that the Exporters' & Traders' Compress & Warehouse Company had been engaged in compressing cotton; that, in addition to receiving cotton to be compressed, it also received and stored cotton for hire; that it thereby assumed the duties, responsibilities, and liabilities of a warehouseman; that when plaintiff in error received the cotton it issued receipts therefor, stating that the same was received for storage and compression, and binding it to redeliver the same to the legal holder of such tickets, or pay the market value thereof. Plaintiff in error in its answer alleged that, if it received any cotton from Bargainer, the same was received under written receipts or contracts issued by it, which recited that the same was received for storage and compression, and expressly bound it to redeliver the same to the legal holder of such receipt or contract, or to pay the market value thereof; loss or damage by fire excepted.

Plaintiff in error further alleged in this connection that, if such cotton was ever received by it, the same was destroyed by fire of incendiary origin. Defendant in error replied thereto by alleging that plaintiff in error was negligent in many specific matters with reference to the safe-keeping of the cotton, and that each of the acts of negligence so charged was the proximate cause of the destruction thereof. Defendant in error further alleged that the stipulation exempting plaintiff in error from liability in case of the destruction of the cotton by fire was, because of such negligence, void and unen-

forceable, and constituted no defense to the demands asserted by him in this suit.

Chief Justice Gallagher in the opinion of the court clearly states, in substance, the issues submitted by the trial court to the jury and their answers thereto, which are as follows:

"(a) Appellant did not use ordinary care in supplying water hose of sufficient length to reach the place on its platform where the fire originated, and such failure proximately caused the destruction of appellee's cotton.

"(b) Appellant did not use ordinary care in supplying its platform with hose of sound material, and such failure proximately caused the destruction of appellee's cotton.

"(c) Appellant did not require its night watchman to encircle all the cotton on its platform on his regular trips of inspection. Appellant, in failing to so require, failed to exercise ordinary care, and such failure proximately caused the destruction of appellee's cotton.

"(d) Appellant did not exercise ordinary care in providing for observation, inspection, and examination of cotton situated on the extended portion of its platform, with a view of protecting the same from fire, and its failure to do so proximately caused the destruction of appellee's cotton.

"(e) Appellee's cotton weighed 8,180 pounds, and the reasonable value thereof at the time it was destroyed was 16 cents per pound."

The cotton tickets executed by plaintiff in error covered cotton delivered to it for storage by Bargainer during the fall of 1920, and the stipulations thereon were on two kinds of blanks, and, among other things, contained the following language:

"(a) " * * * This company binds itself to re-deliver said cotton to the legal holder hereof, or pay the market value thereof, based upon the weight of this company as shown on the margin, loss by act of Providence or fire damage excepted (unless insured by this company), and subject to compress and storage charges. * * *"

"(b) " * * * This company binds itself to re-deliver said cotton to the holder hereof or pay the market value thereof. Loss by Act of Providence and fire damage excepted, unless insured against fire by us. * * *"

This appeal involves the liability of a warehouseman for the destruction of cotton while in its possession by fire. The evidence is undisputed that the cotton while in possession of plaintiff in error was destroyed by fire. It is further undisputed that the cotton was stored with plaintiff in error for hire. It is quite evident from the contract, as expressed in the receipts issued by plaintiff in error, that it obligated "itself to re-deliver said cotton to the legal holder hereof, or pay the market value thereof, * * * loss by act of

Providence or fire damage excepted * * * subject to compress and storage charges."

In Bouvier's Law Dictionary, Vol. 1, pp. 313, 314, etc., is found a concise statement of the origin and development of the term "bailment," and it also contains many definitions of that term given by various writers. As illustrating the views of the different writers upon this subject reflected in the definitions given by them, we copy some of them below:

"A delivery of something of a personal nature by one party to another, to be held according to the purpose or object of the delivery, and to be returned or delivered over when that purpose is accomplished. Prof. Joel Parker, MS. Lect. Harvard Law School, 1851."

"A delivery of a thing in trust for some special object or purpose, and upon a contract, express or implied, to conform to the object or purpose of the trust. Story, Bailm. sec. 2, See Merlin, Repert. Bail."

"A delivery of goods in trust upon a contract, expressed or implied, that the trust shall be duly executed, and the goods restored by the bailee as soon as the purposes of the bailment shall be answered. 2 Kent 559."

See, also, 5 Tex. Jur. § 2, p. 1011, and decisions cited thereunder.

A discussion of the principles of the law of bailment from the time of Lord Holt to the present time is very interesting. But the rules from time to time have undergone changes, and a discussion of those changes would serve no useful purpose here. The rules have been changed until the modern classification recognizes three kinds of bailments, viz.:

(1) If the bailment is for the benefit of the bailor, the law requires of the bailee only what is termed slight diligence, and holds him answerable only for gross negligence. Prince v. I. & G. N. R. R., 64 Tex. 144; Smith v. Sherwood, 2 Tex. 460; Citizens' National Bank v. Ratcliff et al. (Tex. Com. App.) 253 S. W. 253.

(2) If the bailment is for the sole benefit of the bailee, great diligence is required, and he is responsible for slight neglect. Citizens' National Bank v. Ratcliff et al., supra.

(3) If the bailment is for the mutual benefit of the parties, ordinary diligence is demanded, and the bailee is liable accordingly. 5 Tex. Jur. sec. 13, p. 1023; Wilkinson v. Williams, 35 Tex. 181; Mills v. Ashe, 16 Tex. 295; Citizens' National Bank v. Ratcliff et al., supra.

The decisions of this state have announced the general rules that the standard of diligence imposed by law upon a bailee in caring for the property intrusted to him, and liability for loss or damage thereto, depend upon the nature of the bailment.

It is quite plain that this record places the liability of the warehouseman under the

rule where the bailment is for the mutual benefit of both bailor and bailee. In 136 Am. St. Rep., under the case of Carley v. Offutt, at page 213, etc., is a very able and exhaustive review of the authorities bearing upon the duty of warehousemen in the care of property, the question of bailment, and the standard of liability thereunder. The learned author of the notes says: "The rule governing the duty of the warehouseman toward the depositor of goods in his care is that he shall exercise due care and reasonable precaution to protect and preserve the property placed in his custody; that is, such care as an ordinarily prudent person engaged in that business is in the habit of exercising toward property intrusted to him for safekeeping. He should not only store them in a building reasonably safe from within, but should provide that they are equally reasonably safe from danger without. The above is a comprehensive statement of the many different renditions—different only in minor variations—of the rule, as given in a vast list of decisions, from which we have selected the following references (citing many authorities)."

In discussing the liability of a warehouseman for loss of goods in storage by fire, it is further said: "The rule as to loss by fire of the goods stored is exceedingly short and plain, and falls within the lines of diligence and care. The warehouseman is not responsible for such goods destroyed by fire if the fire is not due to his negligence or that of his agents within the scope of their employment, and if the loss is not due to his want of precaution for their safety (citing many authorities)."

■ It is now definitely settled that, within constitutional limitations, the business of warehousemen, being of a public nature, is subject to control by the Legislature, and, in the exercise of that power, the Legislature may prescribe certain regulations with reference thereto and fix the standard of their liability. 40 Cyc. pp. 402 and 403; 27 R. C. L. 958.

In 1919, the Legislature of this state enacted chapter 4 (articles 5612, 5613 et seq., R. S. 1925), known as the Uniform Warehouse Receipts Act, which announces the policy of this state as to the liability of a warehouseman for goods deposited for safe-keeping. This act contains many articles, but the one pertinent to the question involved here is article 5632. It reads: "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

■■ The record is undisputed that the cotton deposited by Bargainer with the plaintiff in error was during the fall of 1920, and therefore the liability of the company was governed by the provisions of the Uniform Warehouse Receipts Act. Article 5632 is merely declaratory of the rule already announced by the authoritative decisions with respect to the liability of a warehouseman for goods left for storage with him. The rule has long been settled that a warehouseman cannot insert provisions in the receipt which would relieve him from the consequences of his own negligence. Words used in the receipt or contract that the warehouseman shall not be responsible for certain causes of damage or injury such as fire, water, etc., is generally held not to exempt the warehouseman from the results of his own negligence or relieve him from the exercise of reasonable care. 27 R. C. L. pp. 997 and 998, and authorities cited in the notes. 40 Cyc. pp. 429, 430 and 431; Langford v. Nevin, 117 Tex. 130, 298 S. W. 536.

■ It is undisputed that the cotton was stored with the plaintiff in error for hire. It is also plain that the Legislature intended in the enactment of article 5632, supra, to use language broad enough to embrace the liability of any warehouseman who accepts goods for storage for hire. That is now the policy of this state as prescribed by the Legislature. Under the terms of the statute, the warehouseman could not contract against its own negligence or from exercising ordinary care. Under the pleadings and evidence, these became issues of fact to be determined, and the jury having decided these controverted issues against the plaintiff in error, it became liable for the value of the cotton destroyed by fire.

The Court of Civil Appeals correctly disposed of this case, and we therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.