## CALLIHAN v. MONTRIEF et al.
No. 12960.

Court of Civil Appeals of Texas.
Fort Worth.
April 6, 1934.

Rehearing Denied May 11, 1934.

of his bid. When the writ of attachment was levied, B. E. Montrief was using the tools in the drilling of an oil well and they were taken from his possession by Sheriff Foster. After the sheriff had taken the tools into his possession, he granted Montrief's request for permission to use the tools for the purpose of finishing the well, and while they were being so used they were badly damaged by fire.

The present suit was instituted by George Callihan, who, by assignment, had acquired all interest of his partner, J. H. Wheeler, in the partnership assets, against the sheriff, J. B. Foster, and B. E. Montrief, to recover $1,807.73, the amount of the former judgment, with interest at 6 per cent. thereon, upon allegations that but for damage done thereto by the fire the drilling tools would have brought at the sheriff's sale more than enough to satisfy the judgment recovered against Maley in the former suit, who is now insolvent.

In answer to plaintiff's suit, the defendant F. E. Foster alleged that he had permitted B. E. Montrief to use the tools for drilling purposes by permission and consent of George Callihan and J. H. Wheeler, plaintiffs in the former suit, acting for themselves and through their attorney, and that therefore plaintiff in the present suit is estopped to claim the damages sued for.

Defendant Foster, by way of cross-action and counterclaim, sought to recover of the plaintiff the sum of $443, which he claimed as court costs accruing to him in the suit, including the cost of executing the writ of attachment and the expense of caring for the tools while in his possession, and the hire of a watchman for the tools after levy of the writ under plaintiff's agreement to reimburse him therefor.

Defendant Foster also sought a recovery over against defendant Montrief and the American Indemnity Company for any judgment that might be recovered against him by the plaintiff. The prayer for that relief was predicated upon an indemnity bond in the sum of $1,000 executed to him by Montrief, as principal, and the indemnity company, as surety, conditioned for the return to the sheriff of the drilling tools in as good condition as the same were prior to the use of them by Montrief, and the further condition that the makers of the bond would indemnify and hold harmless Sheriff Foster from all costs and damages which he may suffer by virtue of his permission to Montrief to use the tools.

Bouldin & Bouldin, of Mineral Wells, and Homer T. Bouldin, of Albany, for appellants.

Thompson & Barwise, Ogden Shannon, and Cantey, Hanger & McMahon, all of Fort Worth, and Marshall & King, of Graham, for appellees.

DUNKLIN, Chief Justice.

In a former suit, George Callihan and J. H. Wheeler, partners, recovered a judgment against Frank Maley for the sum of $1,807.73, with costs of suit and foreclosure of an attachment lien on certain drilling tools owned by Maley. The tools were then sold under that foreclosure by the sheriff, J. E. Foster, who levied the writ, for the sum of $325, the plaintiff George Callihan being the purchaser, but declining to pay the sheriff the amount

By supplemental petition the plaintiff denied the allegations in Foster's cross-action, and further pleaded that it was the duty of Foster, as sheriff, after taking the tools into his possession, to keep them in a safe place, and that, by the exercise of reasonable diligence, he could have stored the same in a warehouse or other safe place for a sum not exceeding $50 as charges for transportation and storage.

B. E. Montrief, in reply to plaintiff's petition, pleaded a general denial, and, further, that the tools were delivered to him with the consent of plaintiff and his attorneys; that subsequent to such delivery, and prior to the injury to the tools by fire, plaintiff and his authorized representatives and attorneys knew the tools were being used by him (Montrief), and after acquiring such notice took no steps to prevent such use and never objected thereto, and by reason thereof plaintiff is now estopped to assert his claim of liability against him (Montrief).

The American Indemnity Company pleaded that it was induced to execute the bond by representation of both Foster and Montrief that George Callihan and his partner, J. H. Wheeler, had agreed and consented that the sheriff could turn over the tools to Montrief, and by reason thereof Foster is now estopped to assert liability against the indemnity company; and, further, that, if Foster was not liable to the plaintiff, he could not recover against the defendant

There was a further plea over against Montrief by the indemnity company on his indemnity bond for any judgment that might be rendered against the indemnity company.

The court denied plaintiff a recovery against the defendants Foster and Montrief and also denied defendant Foster a recovery over against Montrief on the indemnity company's plea over. The judgment further awarded a recovery to the indemnity company on its plea over against B. E. Montrief in the sum of $100. The defendant Foster was denied a recovery on his counterclaim against the plaintiff for costs of the former suit because "not within the jurisdiction of the court."

All parties adversely affected by the judgment gave notice of appeal, and appeals have been prosecuted to this court by the plaintiff, by Sheriff Foster, and by defendant Montrief, all of whom have filed briefs here, as has also the American Indemnity Company.

The evidence shows that the sheriff, in turning over the tools to Montrief, acted upon a letter addressed to him by Messrs. Boulding and Zivley, attorneys of record for Callihan and Wheeler in the former suit. The letter read as follows:

"Honorable Sheriff, Young County, Graham, Texas.

"Dear Sir: Mr. B. E. Montrief is in our office with reference to a string of tools which have been attached by the Albany Wire Rope & Specialty Company, suit pending in the District Court of Shackelford County.

"Mr. Montrief wants to use the string of tools for the purpose of pulling the pipe and plugging the well where these tools are now located.

"As attorneys representing the plaintiff in the case we are anxious to accommodate these parties and would be glad you show them any courtesy you may. We made attachment bond and you took charge of the property. We would not want anything done that would cause our clients to become liable for damages, nor could we release the attachment lien, or the bond.

"We are informed from Mr. Montrief that he will make such indemnity bond as you may require. This matter is in your hands and not ours. However, we would be glad that you show Mr. Montrief any courtesy you may in the matter.

"Yours very truly,
"Boulding & Zivley,
"By: T. T. Bouldin."

The principal issue involved in this appeal as between the plaintiff, Callihan, and the defendant Foster is whether or not that letter was sufficient to work an estoppel against the plaintiff to claim damages from Foster for the damage done to the tools after they were turned over to Montrief.

Article 290, Rev. Civ. Statutes, reads as follows: "When personal property is attached, the same shall remain in the hands of the officer attaching until final judgment, unless a claim be made thereto and bond be given to try the right to the same, or unless the same be replevied or be sold as provided by law."

Article 291 reads: "Any person other than the defendant may claim the personal property so levied on, or any part thereof, upon making the affidavit and giving bond required by the provisions of the title relating to the trial of the right of property."

Article 292 provides for a replevy by the defendant in the suit.

Montrief did not claim ownership of the tools levied on, nor was he defendant in the

attachment suit, and therefore he was not in a position to get possession of them in any statutory method. That fact was well known to him and to the plaintiff and to Sheriff Foster at the time he applied. to plaintiff and to the sheriff for permission to use them to finish the well. While specific instructions for authority to write the letter were not given to the attorneys for plaintiff Callihan, yet it is our conclusion that their act in so doing was not beyond the scope of their authority as such attorneys, and that plaintiff is bound thereby, since the attorneys acted in the utmost good faith and with no thought whatever of jeopardizing plaintiff's interest. 5 Tex. Jur. pp. 452, 453, 454; 6 Corpus Juris, pp. 641, 642, 643; Willis & Bro. v. Chowning, 90 Tex. 617, 40 S. W. 395, 59 Am. St. Rep. 842. And this conclusion is strengthened by the following testimony of plaintiff Callihan himself:

"I knew that Mr. Montrief wanted to use these tools on some property out there. He came by and tried to make some arrangements. Mr. Montrief tried to make some arrangements for the tools. There were not any arrangements made with me. * * *

"I did not have any discussion with Mr. Montrief. I left this matter in the hands of my attorney as to whether Montrief could or could not use these tools. I had nothing to do with it. I never made him any proposition of any kind. I told him they were in the sheriff's hands. He would have to make his arrangements with the sheriff. I did not have any objection to him using the tools for this purpose, but I never gave him any permission to use them, no sir."

It is well settled by all the authorities that the sheriff who levies on property under judicial process is not an insurer of its safety, but only owes the duty to exercise ordinary care to keep it safely. 5 Tex. Jur. p. 223; 27 Tex. Jur. § 57, p. 518; State to Use of Jefferson v. Stidham, 1 W. W. Harr. (Del.) 8, 110 A. 680. In the last-cited case it was held that a sheriff was not liable to the plaintiff for failure to care for property after levying thereon, if such failure was induced by words or acts of the plaintiff or his duly authorized agent. In Freiberg v. Johnson, 71 Tex. 558, 9 S. W. 455, it was held that the sheriff was not liable to the plaintiff in an attachment suit for releasing the property from levy if he was induced to do so by the acts or request of the plaintiff.

Under the facts and authorities above noted, the conclusion reached by the trial court that plaintiff is estopped to recover of Sheriff Foster the damages claimed cannot be disturbed by this court. But Foster's assignment of error to the refusal of the court to award him recovery on his cross-action against plaintiff for $443 costs incurred in the attachment suit cannot be determined, since he failed to prosecute an appeal from that order by filing an appeal bond. 3 Tex. Jur. § 609, p. 870.

The evidence shows that the defendant Montrief by taking over the tools for the purpose of finishing the well became a bailee for his own exclusive benefit. In 5 Tex. Jur. § 20, p. 1031, the following is said: "As has already been seen, the bailee must deliver the bailed property to the true owner when he establishes his title. Moreover, if the bailee has received the property with notice of a claim of title by another adverse to the bailor, he takes and holds it subject to the right of the adverse claimant, though the ostensible title may have been in the bailor. And if he disposes of the property under the direction of the bailor he is liable to the true owner for its value, whether title was established in a suit already brought or thereafter instituted."

Nor is an express agreement of the bailee to return the property necessary, since the law implies such an agreement. 5 Tex. Jur. § 25, p. 1035. We quote the following from the same volume, section 29, page 1039:

"When a bailor seeks to recover the value of property lost while in the hands of the bailee it is not incumbent upon him to allege or prove fraud or negligence; he need only allege and prove delivery to the bailee and the bailee's failure or refusal to return the property, or its return in an injured condition, for there is a presumption that loss or injury to bailed property was caused by the negligence of the bailee, and the absence of fraud and negligence on the part of the bailee is a matter of defense. After the bailor makes the necessary allegations the burden devolves upon the bailee to defend by showing that the property was not lost or injured by reason of his negligence.

" 'The reason of the rule is apparent. The bailee has the sole possession and custody of the chattel bailed. He can not return the article to the bailor in a damaged condition, or not return it all, and by his silence defeat a recovery for the damage because of the bailor's inability to prove how the damage or loss happened.'

"When the bailee accounts for his failure to deliver the property by showing that the loss occurred through no fault of his, the burden is then thrown upon the bailor to prove that the defendant was guilty of negligence."

The decisions of the courts of this state cited in the text amply support that announcement of the rule.

The defendant Montrief did not by any pleading filed seek to show that the fire which damaged the tools did not occur through any negligence on his part, and in his briefs filed in this court the following is said: "We say that there is not one single line of testimony in the record indicating directly or by remote inference, that Montrief or his agents were negligent in their handling of the tools and equipment, or that any acts of theirs amounting to negligence caused the fire which resulted in the damage alleged by the appellant. Not only is there no testimony of negligence resulting in the fire, but there is a complete dearth of evidence as to the cause of the fire, no one essaying any explanation on this point. Negligence is pleaded, but no negligence was proved, and in so far as appellant's cause of action was predicated upon alleged negligence, he has wholly failed to meet the burden which the law imposes upon him."

In the case of Citizens' Nat. Bank v. Ratcliff (Tex. Com. App.) 253 S. W. 253, it was held that the bank in accepting for collection certain Liberty bonds for the benefit of a depositor became a bailee for the mutual benefit of itself and the depositor, and therefore was responsible for failure to exercise ordinary diligence to make the collection.

In Exporters' & Traders' Compress & Warehouse Co. v. Schulze (Tex. Com. App.) 265 S. W. 133, and in Exporters' & Traders' Compress & Warehouse Co. v. Bargainer (Tex. Com. App.) 45 S.W.(2d) 563, it was held that storage of cotton with the warehouseman constituted a bailment for the mutual benefit of the parties, and that the warehouse company, the bailee, was liable for the loss of the cotton by fire while in storage, resulting from the failure of the warehouse company to exercise ordinary diligence to prevent such loss. In the Bargainer Case there is a general statement to the effect that, if the bailment is for the benefit of the bailor only, the bailee is chargeable only with slight diligence and is answerable for gross negligence; if, for the benefit of the bailee only, great diligence is required of him and he is responsible for slight neglect, and if the bailment is for the mutual benefit of both parties, ordinary diligence is demanded of the bailee, and he is responsible for failure to exercise that degree of care. And in the Schulze Case it was further held that proof of the destruction of the cotton by fire was sufficient to overcome the presumption of the bailee's negligence arising from his failure to deliver to the bailor, and that the burden was then cast upon the bailor to prove that the fire resulted from the negligence of the bailee. That question did not arise in the other two cases just cited. The decision followed the announcement in 27 R. C. L. p. 1003 in discussing the liability of warehousemen and in which it was announced that that rule of procedure was in accordance with the great weight of the authorities, with this further statement in that connection: "Some authorities, however, take the view that the burden is upon the warehouseman of showing not only the loss through fire or theft, but also his freedom from negligence. The basis of this holding is that the details as to the care bestowed on the property are within the knowledge of the warehouseman and his servants, and it may be difficult for the bailor to procure the evidence." The authorities referred to being cited in the footnote to the text.

And on page 950 of the same volume it is said: "A warehouseman in the general acceptation of the term is one who receives and stores goods of others as a business and for a compensation or profit. * * * Both warehousemen and common carriers are bailees for hire, but their respective bailments are of different classes."

A number of decisions are cited by the author in support of those announcements. See, also, later decisions noted in First Permanent Supplement of R. C. L. beginning on page 712; and also in notes in L. R. A. 1915B, beginning on page 296.

In 179 N. C. 231, 102 S. E. 313, 314, 9 A. L. R. 554, is the report of a decision by the Supreme Court of North Carolina in the case of Beck v. Wilkins-Ricks Company, in which it was held that, after the owner of an automobile, who had left it with another for repairs, shows that it was destroyed by fire while in the possession of the repair man, the latter must go forward with evidence that he used proper care in the bailment in order to escape liability for the loss. In the opinion of Chief Justice Clark in that case there is an extended review of the au-

thorities bearing on the question of burden of proof in a suit of that character. Following was quoted from 6 C. J. p. 1157:

" 'Sec. 159. In some of the old decisions it was held that the loss or injury raised no presumption of negligence. The bailee is not an insurer of the goods, and when they are lost or damaged it was said that the law, which never presumes any man negligent, would rather attribute the loss to excusable causes. It was not enough for plaintiff to prove the loss or injury, but it was held that he must go further and must show that the same had occurred by defendant's negligence.

" 'Sec. 160. The Modern Rule. The rule adopted in the more modern decisions is that the proof of loss or injury establishes a sufficient prima facie case against the bailee to put him upon his defense. Where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes negligence to be the cause, and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part. But if the possession of the bailee has not been exclusive of that of the bailor the rule does not apply. In order to throw the burden of evidence upon the bailee it is sufficient that the bailor has shown damage to the bailed article that ordinarily does not happen where the requisite degree of care is exercised.'

"The above is sustained by the almost uniform authorities cited in the notes to the above and the reasons are thus summed up: 'Reasons of Rule.—(1) "Since the bailor is generally at a disadvantage in obtaining accurate information of the cause of the loss or damage, the law considers he makes out a case for the application of the rule of res ipsa loquitur by proof of the bailment and the failure of the bailee to deliver the property on proper demand." Corbin v. Gentry & F. Cleaning & Dyeing Co., 181 Mo. App. 151, 155, 167 S. W. 1145. (2) "The rule rests upon the consideration that, where the bailee has exclusive possession the facts attending loss or injury must be peculiarly within his own knowledge. Besides, the failure to return the property, or its return in an injured condition, constitutes the violation of a contract, and it devolves upon the bailee to excuse or justify the breach." Nutt v. Davison, 54 Colo. 586, 588, 131 P. 391, 44 L. R. A. (N. S.) 1170. (3) "The rule is founded in necessity and upon the presump-

tion that a party who, from his situation, has peculiar, if not exclusive, knowledge of facts, if they exist, is best able to prove them. If the bailee, to whose possession, control and care the goods are intrusted, will not account for the failure or refusal to deliver them on demand of the bailor, the presumption is not violent that he has been wanting in diligence, or that he may have wrongfully converted or may wrongfully detain them; or if there be injury to or loss of them during the bailment, it is but just that he be required to show the circumstances, acquitting himself of the want of diligence it was his duty to bestow." Davis v. Hurt, 114 Ala. 146, 150, 21 So. 469, quoted in Hackney v. Perry, 152 Ala. 626, 633, 44 So. 1029, 1031.' "

After further reference to numerous authorities the following was said: "It would be a singular proposition if the plaintiff, who has intrusted his property to the care of the defendant, should find the latter protected from liability for loss of or injury to the property without any proof of the discharge of his duty as bailee, though such evidence is in his special knowledge, unless the plaintiff (who is often a stranger) shall grope around among the defendant's employees to find evidence of the negligence of their employer or of their employees. The destruction or theft of the property, or injury thereof, not being in the ordinary course, calls upon the bailee to explain it, just as a collision or derailment is prima facie negligence which carries the case to the jury. Marcom v. Raleigh & A. Air Line Co., 126 N. C. 200, 35 S. E. 423, and citations in Anno. Ed."

And that case and nearly all of the authorities referred to in the notes involved bailments for the mutual benefit of the bailor and bailee, such as warehousemen, livery stable keepers, innkeepers, common carriers, etc., in which only ordinary care is required of the bailee. The reasoning advanced in the decisions of this state noted in 5 Tex. Jur. p. 1035, referred to above, and in authorities last cited, appeals to us more forcibly still in the case of a bailment for the exclusive benefit of the bailee; and it is our conclusion that, if Montrief's common-law liability as bailee was not enlarged by his agreement with attorneys for plaintiff in the attachment, under which he was granted permission to use the tools (3 R. C. L. § 30, p. 105), then, in order to overcome the presumption of negligence arising from his failure to return the tools in the same condi-

tion as when he received them, he cannot sit silent and thereby cast upon plaintiff in the attachment the burden of proving that the loss resulting from his use of the tools that had been loaned to him without charge, and solely as an accommodation to him, was due to his negligence. In order to overcome that presumption, it was incumbent upon him to go forward with his evidence, if any he has, tending to overcome that presumption of negligence on his part—subject to plaintiff's right to also introduce evidence on that issue—leaving the jury to determine from a preponderance of all the facts and circumstances in evidence whether or not the damage done to the property was the result of a failure of Montrief to exercise extraordinary diligence to avoid such loss. If the bailment had been for the joint benefit of Montrief and the owner of the property or plaintiff in attachment, only ordinary care would have been required of him, and in that event the decision of the Commission of Appeals in the Schulze Case would have been controlling here; but we do not believe our foregoing conclusion is necessarily in conflict therewith.

■ In 3 R. C. L. § 30, p. 105, the following is said: "While, in the absence of a special agreement, the law of bailments outlines definitely the degree of responsibility imposed on a bailee for the care of the thing bailed, this does not prevent the parties from making their own contracts in reference to their mutual rights and liabilities under bailments of property as well as in reference to other subjects, and, generally speaking, it seems that they may by express contract enlarge, abridge, qualify, or supersede the obligations which otherwise would arise from the bailment by implication of law. Thus where a bailee enters into a special contract to return the property in good condition or to pay its value he is an insurer, and if loss occurs while it is in his possession though without his fault, he is liable for its value. However, according to the weight of authority, an agreement by the bailee to return the bailment in good condition, or in as good condition as when received, ordinary wear and tear excepted, does not in the absence of a stipulation to pay in case of non-delivery, indicate an intention to enlarge the common-law liability of the bailee. But the fact that the bailee deposits a sum of money or gives a bond as security for the return of the bailment in good condition has been held to evidence an intention to extend the common-law liability of the bailee, and it seems

that, whenever the bailee is deemed to have entered into a special engagement to return the property at a certain time in good order, he will not be released therefrom even where it appears that the property was destroyed by the act of God. The principle that lies at the foundation of the series of authorities, English and American, on this question, is that where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good notwithstanding any accident by inevitable necessity, because he might have provided against it by his own contract."

In order to get possession of the tools, Montrief executed a bond to the sheriff with this stipulation: "Now therefore the condition of this obligation is such that if the principal shall, after having made use of the personal property above referred to, or such part thereof as he may desire, return all such property used to J. B. Foster, Sheriff of Young County, Texas, or his successor or successors in office, in as good condition as the same was in prior to such use, and shall fully indemnify and save harmless the said J. B. Foster, Sheriff, from all costs and damage which he may suffer by virtue of permitting the principal to use all or a part of the personal property referred to, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

As shown by the letter written by counsel for plaintiff in the attachment suit, and by what Montrief said to him at the time, the permission given for the loan of the tools to Montrief was solely as an accommodation to him and on condition that he would execute a bond of that character; and it is clear that the real intention for requiring such a bond was for the ultimate benefit of the plaintiff in the attachment suit, even though, in legal effect, it was a bond of indemnity to the sheriff only, and by reason thereof could not be sued on by plaintiff in the case. Those facts tended to show a specific agreement or understanding on the part of Montrief that his use of the tools would be at his risk of damage thereto, and that he would return them to the sheriff in an uninjured condition, except for ordinary wear, at all hazards, irrespective of any question of negligence on his part, under the doctrine announced in authorities last referred to.

For the reasons stated, the evidence introduced showed, prima facie, a right in plaintiff to recover of Montrief for the damage done to the property turned over to him by the sheriff, which the latter was holding by

virtue of the levy of the writ of attachment. But the evidence was conflicting as to whether all or a part only of the property levied on was turned over to Montrief; and also as to whether all or a part only was damaged by fire.

Montrief has not complained of the judgment rendered against him for the sum of $100 in favor of the American Indemnity Company.

Accordingly, the judgment of the trial court that plaintiff recover nothing against the defendant Foster is affirmed. The judgment denying defendant Foster recovery on his cross-action against the plaintiff Callihan for the sum of $443 for costs incurred in the attachment suit is left undisturbed.

The judgment against Montrief in favor of the American Indemnity Company is affirmed; as is also the judgment that defendant Foster recover nothing on his plea over against the American Indemnity Company and Montrief.

The judgment denying plaintiff a recovery against Montrief is reversed; and plaintiff's suit against Montrief for damages to the tools while in his possession is remanded for another trial. But the remand of the case will be for that purpose only.

Affirmed in part, left undisturbed in part, and remanded in part. Rule 62 for the Government of Courts of Civil Appeals.

The costs of appeal are taxed against plaintiff and the defendant Montrief, share and share alike.

### On Motion for Rehearing.

On original hearing the question of what would be the proper measure of George Callihan's damages, in the event of a recovery by him against Montrief, was not presented, and nothing we said was intended as a determination thereof. And to remove any doubt on that point we shall add that, if Callihan is entitled to recover of Montrief, the proper measure of his damages would be the extent to which his attachment lien on the property seized was depreciated, if any, by reason of the fire occurring while in Montrief's possession. And if, after the fire, the market value of the property left was enough to satisfy the attachment lien, then Callihan could recover nothing of Montrief. While the market value of the property would not of itself be the measure of damages, the same would necessarily be involved in determination of the real issue indicated above.

Edmondson v. Carroll (Tex. Civ. App.) 28 S.W.(2d) 250; Carroll v. Edmondson (Tex. Com. App.) 41 S.W.(2d) 64.

Nor can we concur in the contention now made in Montrief's motion for rehearing, in effect that testimony of the witness Verney Anderson was sufficient to support an implied finding by the trial court that after the fire the property remaining was worth more than Callihan's judgment against Maley, defendant in the attachment suit, in the sum of $1,807.73. According to Anderson's testimony pointed out in the motion, which was flatly contradicted by plaintiff's testimony, the market value of the tools before the fire was $3,100, and $2,620 after the fire. We believe that the record precludes the implied finding suggested, in view of the recitals contained therein, indicating that plaintiff was denied a recovery because he had failed to prove the primary basis of his claim, to wit, the alleged negligence of Montrief in the first instance, to support which, as noted in Montrief's briefs here, no evidence was introduced; and in view of the fact that under the judgment of foreclosure of the attachment lien the tools were sold at auction to the highest bidder for only $325, and with no evidence to show that anything occurred at that sale to prevent a higher bid.

The motion of appellee Montrief is overruled; as is also the motion of appellant, which we have duly considered.