**RYAN v. SCHWAB et al.**

No. 15421.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 9, 1953.

Kemper & Wilson and Eugene J. Wilson, all of Houston, for appellant.

Vinson, Elkins, Weems & Searls, and Jack D. Head, all of Houston, for appellees Dick Schwab, D. G. Hawthorn, E. O. Bennett, Robert N. Niven and J. O. Lewis.

Andrews, Kurth, Campbell & Bradley, and Leon M. Payne, all of Houston, for appellee Ray C. Fish.

RENFRO, Justice.

The appellant Ryan brought suit against Dick Schwab and five associates for money due under a written contract for the drilling of a wildcat oil well and for the value of drill stem pipe cemented in the hole by order of appellees to seal off salt water flow.

Under written contract, Ryan was to drill to a depth of 5,500 feet at the rate of $3 per lineal foot. The appellees had the right to require appellant to drill to 8,000 feet. The basis of pay, after 5,500 feet, was to be at the rate of $550 per day.

No production was found at 5,500 feet and the appellees directed appellant to continue drilling. After a depth of 6,000 feet had been reached, appellees sent one Carlton to the well to act as their representative.

While drilling at 7,735 feet, hot salt water was encountered. Appellant's driller was using, at the time, a mixed string of drill pipe consisting of 4½ inch pipe on the bottom and 3½ inch at the top. The hot salt water forced the drilling mud out of the well, and as more mud was pumped in the hot salt water continued to force it out. Appellant's driller tried to close the blowout preventer but was unable to do so because the 4½ inch rams in the preventer would not fit around the 3½ inch drill pipe.

Carlton ordered that the drill pipe be turned loose and the master gate closed over it. This was done and the pipe was for all practicable purposes lost. It is conceded by both sides that the expense of recovering the pipe, if recovery is possible, would exceed its value.

The parties stipulated the amount due appellant for drilling operations and that part of the judgment is not challenged. The appellant Ryan has appealed from that part

of the judgment denying him recovery of the value of the drill pipe.

The jury found, in answer to the first four issues, that Carlton, acting in the scope of his employment, ordered the day driller to set the drill stem in the hole and close the master valve, and the appellant's driller did so shut down the well because ordered to do so by Carlton. In answer to issue No. 5, however, the jury found that the method used in shutting off the well was the method that would be used by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances.

The jury found that Carlton knew, in time to have enabled him to order a 3½ inch blowout preventer installed, that appellant was not using such preventer.

In further answer to further issues the jury found that there was not a blowout at 7,735 feet; that appellees knew before trouble was encountered that appellant did not have blowout insurance, but allowed the appellant to continue drilling.

Under the terms of the contract, appellant was required to furnish a Cameron blowout and the various size rams for the blowout preventers and all other materials and things necessary to complete the well, including labor and water, and to carry blowout insurance.

Appellant moved for judgment on the verdict. Judgment was entered for appellees on the verdict.

The appellant alleges error of the court in refusing to allow him judgment for the drill pipe, which the jury found to be $11,426.90, and alleges the court erred in construing the contract to provide that Ryan, as drilling contractor, must bear all or any loss of equipment, including drill pipe, used in drilling operations under circumstances where such loss was occasioned by the deliberate design and act of appellees' agent in ordering destruction of the drill pipe as an expedient to minimize appellees' cost in conducting drilling operations, after a flow of salt water had been encountered and at a time when appellees were in complete and exclusive control of the drilling rig and its equipment and personnel.

It is appellant's contention that after the appellees' agent assumed control and operation of the well, that, whether specified or not in the contract, the law implied that the bailee, appellees herein, should return the bailed equipment. He argues that it was not necessary to show negligence on the part of the bailee for the reason that the act of cementing the pipe stem in the ground was a considered and deliberate undertaking for the sole purpose of minimizing appellees' own expenditures, as well as to limit their potential third party damages. He argues that the appellees, having refused to return the pipe, or to pay the appellant the value thereof, their liability, in law, to do so is absolute. He contends further that Carlton agreed in writing to be responsible for the drill pipe in consideration for appellant's permitting further use of the rig.

The writing by Carlton referred to in the preceding paragraph was dated July 30, 1948, and reads as follows: "I, Earl Carlton (Dick Schwab rep) give orders to rig up to try kill well pumping cement thru drill pipe 3½" will be responsible for any damage done to any equipment belonging to S. J. Ryan, Contractor." The drill pipe had become stuck or lost on July 22nd. Appellant's rig had been released on July 24th. The well had been abandoned on July 28th. Carlton testified that upon discovering the well was not yet dead the appellant was ordered to rig the equipment for further efforts to kill the well, and that he gave the above memorandum because Ryan mentioned that the boilers or something might be blown up; that drill pipe was not discussed. Appellant's brother testified that the memorandum was intended to guarantee payment of the drill pipe. The appellant requested an issue, which the court refused to submit, inquiring if the appellees, by the memorandum, intended to obligate themselves for the loss of the drill pipe. No point of error is based on the refusal of the court to submit such issue.

The appellant cannot rely upon any written promise by appellees to insure against loss of the pipe, other than the Carlton memorandum, for the only provision in the written contract pertaining to loss reads as follows: "Contractor agrees to hold Owners harmless from any and all claims, expense, loss and damage arising from any cause whatsoever in connection with the work to be performed under this contract, regardless of whether such work be performed by Contractor, or employees of Contractor, or by sub-contractor or by all." We do not find any provision in the contract imposing any liability upon appellees for loss or damage.

■ The Carlton memorandum, in our opinion, obviously refers to any damage that might be sustained in further efforts to kill the well, and does not refer to any previous loss or damage.

In the absence of a jury finding to the contrary, we hold that the memorandum did not refer to the drill pipe, and therefore cannot agree with appellant that Carlton agreed to pay for same.

■ The evidence does not support appellant's contention that the drill pipe was destroyed by the deliberate design of appellees as an expedient to minimize their own loss in conducting drilling operations. It is true the jury found the well did not blow out. It is true also that the jury found that appellees' agent was not negligent in doing what he did. Appellant's driller testified in substance that what was done was the only thing to be done to stop the flow of hot salt water. Appellant's tool pusher testified the well was "belching, kicking up, kicking over." In answer to the question, "Now, from your experience in the oil industry, did you have any sense of fear or danger as to what might happen to you personally or the men at the well or the rig if that kicking or belching of the mud wasn't stopped?" the witness said, "Why certainly, there would have been any amount of damage." He further testified he was afraid damage would be caused if the flowing was not stopped as soon as possible, and that he was unable to control the kicking and belching without putting the pipe on the bottom and closing the master gate over the top of it. While there is other testimony to the same effect, we deem the above to be sufficient to uphold the jury finding that Carlton acted in a prudent manner under the circumstances.

In view of such jury finding, the appellant's contention that the drill pipe was destroyed by the deliberate design of appellees to minimize their own loss is not tenable.

It remains then to determine whether appellees were liable as bailees for the value of the pipe.

The Commission of Appeals in Exporters' & Traders' Compress & Warehouse Co. v. Bargainer, 45 S.W.2d 563, 564, recognizes the following principles of bailment:

"(1) If the bailment is for the benefit of the bailor, the law requires of the bailee only what is termed slight diligence, and holds him answerable only for gross negligence (citing cases).

"(2) If the bailment is for the sole benefit of the bailee, great diligence is required, and he is responsible for slight neglect (citing case).

"(3) If the bailment is for the mutual benefit of the parties, ordinary diligence is demanded, and the bailee is liable accordingly (citing cases).

"The decisions of this state have announced the general rules that the standard of diligence imposed by law upon a bailee in caring for the property intrusted to him, and liability for loss or damage thereto, depend upon the nature of the bailment."

■ If the bailment in question was for the joint or mutual benefit of appellant and appellees, only ordinary care was required of appellees, and, as heretofore noted, the jury found that appellees' agent did exercise ordinary care.

The foregoing rule is approved in Citizens' National Bank of Jasper v. Ratcliff & Lanier, Tex.Com.App., 253 S.W. 253, 255, wherein the court approves the following statement: " '* * * it is also well established as a general rule that where the bailment is for mutual benefit of the parties to the transaction, whatever may be the nature of the benefit to the bailee, the bailment is not gratuitous, and in such case the bailee is held to the exercise of ordinary care. In other words, where the bailment is for mutual benefit of the parties, the bailee must be responsible for breach if only ordinary negligence be shown.' "

In the instant case the appellees could stop drilling at 5,500 feet. They elected, however, to "fog" on down to 8,000 feet. From 5,500 to 8,000 feet appellant was entitled to $550 per day. He thus received a benefit by the additional drilling. At the time of the emergency it was to his interest that proper care be taken in stopping the flow of hot salt water so as to prevent damage to his rig and equipment and possible injury or loss of life to his employees. Appellees were benefitted by the bailment in that they thought their agent Carlton could be of assistance to appellant's crew in drilling faster to the required depth. They could expect production or, in the event of a dry hole, dry hole contributions from certain oil companies with whom they had contracts.

The facts were such as to constitute the bailment reciprocally beneficial to both parties.

■ Since the bailment was for the mutual benefit of both parties, the appellees were not liable for the loss of the pipe, the jury having found that appellees were not negligent. Citizens' National Bank of Jasper v. Ratcliff & Lanier, Tex.Com.App., 253 S.W. 253; Whitehouse Bros. v. S. H. Abbott & Son, Tex.Civ.App., 228 S.W. 599; Leonard Bros. v. Standifer, Tex.Civ.App., 65 S.W.2d 1112.

The appellant relies upon Callihan v. Montrief, Tex.Civ.App., 71 S.W.2d 564; Seale v. White, Tex.Civ.App., 217 S.W.2d 38; Kirkland v. Mission Pipe & Supply Co., Tex.Civ.App., 182 S.W.2d 854; Trammell v. Whitlock, 150 Tex. 500, 242 S.W.2d 157.

We do not find that our decision is inconsistent with or in conflict with the above cases.

In the Callihan case the bailment of drilling tools was for exclusive benefit of bailee. The tools were destroyed by fire. This court held that the destruction thereof, not being in the ordinary course, called upon the bailee to explain it, leaving to the jury to determine from a preponderance of all the facts and circumstances in evidence whether or not the damage to the property was the result of a failure of Montrief to exercise extraordinary diligence to avoid such loss.

The bailee in the Kirkland case presented as a defense that the pipe involved was not as represented by the bailor. The jury found against his contention.

In the Seale case [217 S.W.2d 39], involving loss of an airplane, there were express "allegations and proof of express agreement under which, observant of its terms, the airplane would not have been destroyed", and it was for violation of that express agreement that the bailee was held guilty of conversion.

The Commission of Appeals in the Trammell case held that under the pleadings and evidence the record reflected a prima facie case of negligence against the bailee. Neither by plea nor evidence did the bailee rebut that presumption of negligence.

We hold the facts of this case, as reflected in the record, show bailees were not insurers of the drill pipe, that they did not agree to pay for same, and therefore, under the jury's finding that appellees' agent acted as a "person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances," the bailees are not liable for the loss of the pipe. The trial court did not err in rendering judgment that appellant take nothing as to said pipe.

The judgment of the trial court is affirmed.